# Manchester Fire Assurance Company v. Feibelman.

### *Action on a Policy of Fire Insurance.*

1. *Insurance; fact that insured had not obtained a license to carry on business immaterial.*—The fact that one who has insured a stock of goods has not procured a license as required by law to carry on his business, is immaterial and can not affect the insurance; and in an action on a fire insurance policy, by which was insured a stock of liquors and the fixtures in a saloon, a plea which sets up that the plaintiff had not procured a license, as required by law, to retail spirituous liquors, presents no defense.

2. *Same; amendment of complaint; when it takes effect.*—Where the original complaint in an action on a fire insurance policy was filed, as provided in the policy, within twelve months after the loss, an amendment to the complaint introducing no new matter, which is filed by leave of the court after the expiration of twelve months, relates back to the filing of the original complaint, and is not barred.

3. *Pleading and practice; when plea failing to answer the entire complaint demurrable.*—Where a plea, purporting to be an answer to the entire complaint in a suit at law, is, as a matter of fact, not such an answer, it is demurrable.

4. *Insurance; effect of breach as to part of the articles insured.* Where in a policy of fire insurance, separate valuations are made of different and separate articles, and the insurance as to each is divisible, a breach of a condition of the policy avoiding the contract as to some of the articles, does not avoid the entire policy.

5. *Same; action on insurance policy; admissibility in evidence of the insured's power of attorney; effect of ratification of agent's act.*—In an action on a fire insurance policy, where one of the defenses interposed is that the plaintiff was not the owner of the property destroyed at the time of the fire, and there was evidence tending to show that there was a transfer of said property to the plaintiff by the agent of the insured, who signed the insured's name to the bill of sale, the introduction in evidence of the power of attorney from the insured to said agent, though erroneous because its execution was not duly proven, is error without injury, when it is further shown that at the time of the execution of said

[Manchester Fire Assurance Co. v. Feibelman.]

transfer the insured was at the place of its execution and
knew that it was executed in his name, by his agent, and
further that a few days thereafter the insurance company
gave its consent to said transfer by indorsement regularly
and duly entered on the policy.

6. *Same; evidence as to loss of articles not included in the policy
   inadmissible.*—In an action on a fire insurance policy, where
   the policy introduced in evidence contained a list of the
   property insured, including fixtures, furniture and other arti-
   cles in the place of business of the insured, but did not in-
   clude chairs, in answer to a question as to what fixtures were
   in the insured store at the time of the fire, it is not permissi-
   ble for a witness to testify, in addition to other articles men-
   tioned, that there were "some chairs" in the store at the
   time; said chairs not being fixtures, and not being among
   the articles insured and enumerated in the policy.

7. *Same; admissibility of evidence tending to show a waiver of
   proof of loss.*—In an action on a fire insurance policy, where
   the defendant by special plea sets up that the plaintiff had
   not made proof of loss as required by the policy, and the
   plaintiff replied to said plea, by special replication, that by
   the acts of the defendant's adjuster, there had been a waiver
   of the proof of loss, in that said adjuster had offered to pay
   the plaintiff a certain amount on said policy in settlement of
   the claim, and upon this replication issue was joined, testi-
   mony that the defendant's adjuster offered to pay the plain-
   tiff a less sum than the amount claimed under the policy, and
   to stop all criminal proceedings against the plaintiff's agent,
   in which he was charged with arson for willfully setting fire
   to the property covered by the insurance, is admissible in evi-
   dence, as tending to establish the truth of the replication.

8. *Same; same; policy of insurance on stock of goods includes new
   goods purchased and put into said stock.*—Where one conduct-
   ing a mercantile business takes out what is termed a shifting
   policy of insurance on his stock of goods, said policy covers
   new goods of the kind insured bought and placed in the
   stock, not exceeding the value of the amount insured; and
   in an action on said policy for the loss of the insured's stock
   of goods by fire, it is competent for the plaintiff to show that
   after the issuance of the policy, there were other goods pur-
   chased and added to his stock in the course of his business,
   some of which were in the store at the time of the fire.

9. *Same; when evidence tending to show that the loss was occa-
   sioned by the property being set on fire inadmissible.*—In an
   action on a policy of fire insurance, where the issues pre-
   sented by the pleading are that the plaintiff was not the
   owner of the policy, or of the property destroyed, and that
   there was a waiver of proof of loss, as required by the policy,

it is not competent to ask witnesses questions calling for evidence tending to show that the property was destroyed by being willfully set on fire by the plaintiff's agent; such evidence being irrelevant to any of the issues in the case.

10. *Same; evidence as to the plaintiff's ownership of the articles admissible.*—In an action on a fire insurance policy, which covered certain enumerated articles used in the conduct of plaintiff's business, which was managed by an agent, where one of the issues in the case was the plaintiff's ownership of the property destroyed by fire, and the agent had testified, on cross-examination, that he had bought some of the articles destroyed and paid for them, it is competent for the defendant to further ask said witness, if it was not a fact that said articles had not been paid for at the time of the fire, and that the seller thereof retained the title until they were paid for; and a general objection to such question should be overruled.

11. *Same; when evidence as to plaintiff's deposit in a bank admissible.*—In an action on a fire insurance policy, where one of the issues in the case is the plaintiff's ownership of the property insured at the time of the fire, the bank book of plaintiff, showing deposits in a bank about the time of the alleged purchase of the goods insured, is admissible in evidence, as tending to show that she had means with which to purchase the goods, and her ownership of them.

12. *Same; evidence as to plaintiff's agent signing plaintiff's name to affidavit of loss admissible.*—In such an action, evidence that the agent of plaintiff signed plaintiff's name to the affidavit of loss, made after the destruction of the insured property by fire, as his own, and without disclosing the fact that he was signing the plaintiff's name, is admissible in evidence as bearing upon the issue of the *bona fides* of the sale of the goods to the plaintiff.

13. *Same; admissibility of evidence as to what property was in the store at the time of the fire.*—In an action on a fire insurance policy, which was taken out on the fixtures and stock of goods in a saloon, alleged to have been owned by the plaintiff, where, among the articles alleged to have been destroyed was a barrel of whiskey, and the defendant had introduced evidence tending to show that the contents of said barrel had been emptied, during the examination of a witness, who testified that he went into the saloon as soon as possible after the fire was discovered, it is competent for him to testify, in answer to the question as to what examination he made of the barrels, that he examined them until he was satisfied that there was no whiskey in any of them, and that he could not find any; such testimony tending to show how complete

[Manchester Fire Assurance Co. v. Feibelman.]

was his examination, and that there' was no whiskey in the barrels.

14. *Same; evidence as to ownership of property by plaintiff's agent admissible.*—In an action on a fire insurance policy, where one of the issues of the case was as to the ownership of the policy by the plaintiff, evidence of the statements by plaintiff's general agent, who managed plaintiff's business, to the effect that he, the agent, was the owner of the insured property, is admissible.

15. *Same; same; opinion as to who defendant's agent thought he was dealing with inadmissible.*—In such a case testimony of the defendant's agent, that at the time of consenting to the transfer of the policy from the one to whom it was issued to the plaintiff, testimony of the defendant's agent as to whom he thought he was consenting for the transfer to be made, whether to the plaintiff's agent or to the plaintiff himself, is inadmissible.

16. *Same; what injury is equivalent to total loss.*—If property included in a fire insurance policy is so damaged by fire as to render it useless for the purposes for which the property was used, such injury is a destruction thereof within the meaning of the law.

17. *Same; duty of the jury to ascertain the market value of the property alleged to have been destroyed.*—In an action on a fire insurance policy which covered a stock of goods or merchandise, it is the duty of the jury to ascertain from the evidence how much of the stock of merchandise was destroyed, and what was the market value thereof; and if the jury can not ascertain from the evidence what was the market value of the portion of the stock of merchandise destroyed, they can not render a verdict for the plaintiff as to such property; and a charge which so instructs the jury asserts a correct proposition of law and should be given.

18. *Same; insurance company not responsible for property not included in a policy; charge to the jury.*—Where in an action on an insurance policy, the court improperly allowed proof of loss of property which was not included in the policy, a charge which instructs the jury that the plaintiff could not recover anything for the loss of such property is correct and should be given.

19. *Same; effect of videlicit in alleging date of transfer of policy; variance.*—In an action on a fire insurance policy, which plaintiff alleged had been transferred to him, and in the complaint the date of the transfer of said policy is stated under a videlicit, as having been on the first day of the month, proof that said transfer was on the fifth day of said month, does not constitute a variance between the allegation and proof.

20. *Charges to the jury; when properly refused.*—Where a complaint contains two or more counts, charges to the jury which are asked, as being applicable to the whole complaint, but which are only good as to one of the counts, are properly refused.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This action was brought by the appellee, E. Feibelman, against the Manchester Fire Assurance Company, and was commenced on May 6, 1892.

The complaint as originally filed contained one count, and was as follows: "1. The plaintiff claims of the defendant the sum of fourteen hundred, three and no-100 dollars, being the value of the loss by fire on fixtures, six hundred dollars, two pool tables, one hundred dollars each, and six hundred and three dollars on stock of wine, brandy, whiskey, beer, tobacco and cigars and other merchandise as per adjustment with one Weatherbee, the defendant's adjuster, which the defendant, on the 3d day of September, 1891, insured against loss or injury by fire and other perils on the policy of insurance for the term of one year, which said property was destroyed by fire on January 10th, 1892, of which the defendant has had notice."

A second count was afterwards filed, but was subsequently withdrawn. On November 20, 1896, a third count to the complaint was, by leave of the court, filed, which was as follows: "3. The plaintiff claims of the defendant the further sum of fourteen hundred and three and no-100 dollars, being the value of fixtures, side board, glasses, beer cooler, screen, cash register, show case and other fixtures—on his pool tables two hundred dollars—on his stock of wine, brandy, whiskey, beer, tobacco and cigars and such other merchandise, not more hazardous as is usual in this trade, seven hundred dollars, which the defendant, on the 3d day of September, 1891, insured against loss or injury or other perils in the policy of insurance mentioned, which property was wholly destroyed by fire on the 10th day of January, 1892, of which the defendant has had notice. And plaintiff avers that said policy of insurance was issued to H. A. Feibelman; that by said H. A. Feibelman transferred and assigned with the consent of the said defend-

ant thereto, on, to-wit, the 1st day of January, 1892, to plaintiff, and that the same is now her property."

The defendant interposed 29 special pleas. The substance of all these pleas, material to the case on the present appeal, is sufficiently set forth in the opinion, with the exception of the 8th and 29th.

The 8th plea was as follows: "Eighth. For further answer, the defendant says, that after the policy named in the complaint was issued, H. A. Feibelman, to whom said policy was issued, executed a mortgage to the South Side Savings Bank, a body corporate, upon the three pool tables named in the complaint, the same being a part of the property insured, which rendered said policy void under the terms and conditions thereof." To this plea the plaintiff demurred upon the ground that even though the property mentioned in said plea had been mortgaged to the South Side Savings Bank, yet, nevertheless it would not render void the policy as to the other property covered by the insurance, and is, therefore, no answer to the plaintiff's complaint. This demurrer was sustained, and the defendant duly excepted.

The 29th plea was as follows: "29. For further answer to the 3d count, defendant says, that it was provided and stated in the policy of insurance sued on that no suit in law or equity shall be sustained thereon, unless commenced within twelve months next after the fire, and defendant avers that more than twelve months elapsed after the fire which destroyed or damaged the property mentioned in said count before said count was filed, and that by reason thereof the cause of action set out in said count can not be sustained and is barred." The plaintiff demurred to this plea. The demurrer was sustained, and the defendant duly excepted.

The evidence in the case tended to show the following facts: On September 3, 1891, H. A. Feibelman procured a policy of insurance with the Manchester Fire Assurance Company. This policy is set out in the bill of exceptions. At the time of the issuance of said policy, H. A. Feibelman was engaged in the liquor business as a saloon-keeper in the city of Birmingham, and the policy was taken out on specified fixtures, pool tables and merchandise. M. J. Feibelman was the agent

and general manager for H. A. Feibelman, and was in charge of the business as such. On January 1, 1892, H. A. Feibelman sold and transferred by bill of sale to E. Feibelman, the plaintiff in this suit, who was his step-mother, the business and stock of goods on hand. To the bill of sale by which this transfer and sale were made, M. J. Feibelman signed the name of H. A. Feibelman. On January 10th, 1892, the property embraced in the bill of sale, together with such goods as had been purchased between the 1st and 10th of January, were destroyed by fire. The evidence further tended to show that the consideration of the sale from H. A. Feibelman to E. Feibelman was $1,714.02; that of this amount $175 and $225 were paid in cash; that H. A. Feibelman was indebted to E. Feibelman in the amount of $500, which debt was cancelled as a part of the consideration, but as to the payment of the balance, the witness did not know how it was made.

The plaintiff's testimony tended to show that defendant's adjuster, one Weatherbee, told M. J. Feibelman, who was in charge of the business at the time of the fire, as a representative of E. Feibelman, that his company would not pay anything for the loss, by reason of the fact that the city authorities were going to have said Feibelman arrested for burning the house; but that subsequently, said adjuster offered to pay said Feibelman $175 and dismiss the prosecution against him, if he would surrender the policy. There was also evidence for plaintiff, tending to show that when the defendant's adjuster came to examine into the loss, that he required plaintiff's agent to bring the books of plaintiff to the office of the agent of the company in Birmingham, and to make out an itemized list of the property injured or destroyed, and the adjuster put down the figures as they were called out from plaintiff's books, and that the amount aggregated $1,404; that this was sworn to by M. J. Feibelman, and signed by him in the name of E. Feilbelman; that he subsequently, upon being asked, stated that he was not E. Feibelman, but that his name was M. J. Feibelman.

The testimony for the defendant tended to show that after the fire the barrels and kegs were examined and found empty; that the saloon had been looted before the

fire; that the fixtures were scorched and blackened: that there were few goods of any kind in said store. The testimony further tended to show that when defendant's adjuster came, M. J. Feibelman met him in the agent's (Hardeman's) office, and made an affidavit as to property destroyed, and signed the name of E. Feilbelman, the adjuster, the agent and the notary all supposing that he was E. Feibelman; that when it was discovered he was not E. Feibelman, the adjuster demanded his authority; that he claimed to have a power of attorney, and was asked to produce it, and being unable to do so, the adjuster refused to treat further with him until he could produce his authority, which he never did, and the plaintiff was never met or communicated with by the adjuster; that there was no adjustment of the loss, but M. J. Feibelman merely called a list of the property destroyed or injured, and the adjuster put them down as they were called out from the plaintiff's books, and the list was sworn to by M. J. Feibelman, and the name of E. Feibelman subscribed thereto by M. J. Feibelman, before it was discovered that he was not E. Feibelman; that defendant's adjuster never offered to pay plaintiff or her agent any amount, and never refused to pay, but did refuse to treat with M. J. Feibelman, because he could not produce his authority. The defendant's testimony further tended to show that at the former trial, M. J. Feibelman testified that the reason the new barrel of whiskey was billed to H. A. Feibelman, was that it was ordered in December, 1891; but the bill itself shows that the order was given the 2d day of January, 1892, the day after the alleged sale. The other tendencies of the evidence necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the introduction of M. J. Feibelman, as a witness for the plaintiff, he testified that at the time of the transfer from H. A. Feibelman to E. Feibelman, of the property which was covered by the policy of insurance, he, M. J. Feibelman, was the general manager and was conducting the business for H. A. Feibelman. That he acted for H. A. Feibelman under a power of attorney. Said power of attorney was offered in evidence, and the defendant objected on the ground that it was not self-

proving, and before it could be admitted in evidence its execution would have to be proven by the notary public before whom it was acknowledged, the acknowledgment not being as required by the Alabama statute. This objection was overruled, and the defendant excepted. Said power of attorney was then read to the jury, and is in words and figures as follows, to-wit: "State of Mississippi, Warren County. Know all men by these presents, that I, H. A. Feibelman, of said county and State, have this day constituted and appointed, and do by these presents constitute and appoint M. J. Feibelman my true and lawful attorney, for me and in my name to purchase, sue and collect, and do all and generally my business in my bar which I own in the city of Birmingham in the State of Alabama, giving and granting unto my said attorney, full power and authority to do all acts necessary and proper to be done in and about the premises. Witness my hand and seal this, the 26th day of June, 1891. '[Signed]. H. A. Feibelman (Seal.)"

"State of Mississippi, Warren County. Personally appeared before me, L. M. Lowenberg, a notary public in and for said county and State, H. A. Feibelman, who is personally known to be the same, and acknowledged that he signed, sealed and delivered the foregoing power of attorney on the day and year therein set forth as his act and deed, and for the purposes therein mentioned. In witness whereof I have hereunto set my hand and official seal of office at office this the 26th day of June, 1891. [Signed.] L. M. Lowenberg, Notary Public." It was also shown by the testimony of this witness that the consent to the transfer which was indorsed on the policy was signed by Thomas Hardeman, who was at that time the agent of the defendant.

During the further examination of M. J. Feibelman as a witness, after he had testified to the burning of the store and the circumstances attendant thereon, the witness was then asked this question: "Didn't you take the whiskey out of that new barrel the same night, and pour it on the floor and throw it on the fixtures there?" Plaintiff objected to the question, the court sustained the objection, and the defendant excepted. This ruling is the basis of the 13th assignment-of error.

The plaintiff offered in evidence the bank book of E. Feibelman showing deposits in the South Side Savings Bank in 1891. Defendant objected to the introduction of the bank book of E. Feibelman, on the grounds that it was incompetent, irrelevant and immaterial. This objection was overruled by the court, and the defendant excepted.

D. C. Buckshaw being introduced on behalf of the defendant, testified to the effect that he was a notary public in January, 1892. That M. J. Feibelman made an affidavit before him as such notary public. Witness was asked this question: "How did he sign that affidavit?" The plaintiff objected to this question, the court sustained said objection, and the defendant excepted. Witness was next asked this question: "Did you swear him as E. Feibelman or M. J. Feibelman?" Plaintiff objected to the question, the court sustained said objection, and the defendant duly excepted to said ruling. Witness was next asked this question: "Well, did he sign his name, or did he sign the name of somebody else?" Plaintiff objected to this question, the court sustained the objection, and the defendant excepted.

Witness testified that M. J. Feibelman represented himself as the party whose name was signed to the paper, and that he swore him as such. Witness was then asked this question: "Did he do or say anything to inform Weatherbee or Hardeman that he was not the party whose name was signed to the affidavit?" The plaintiff objected to this question, the court sustained the objection, and the defendant excepted.

Witness was then asked this question: "Did you know, at the time he signed E. Feibelman, if that was the name signed, that he was not E. Feibelman?" and answered "No, sir, I did not." The plaintiff objected to this question and moved to exclude the answer thereto. The court sustained the objection and granted the motion, and the defendant separately excepted. These several rulings to which exceptions were reserved constitute the bases of the 17th, 18th, 19th, and 20th assignments of errors.

J. W. Kilpatrick being introduced on behalf of the defendant, gave testimony to the effect that he was cap-

tain of the night police of Birmingham, January 10th, 1892, that he remembered the Favorite Saloon being afire. That the fire was extinguished by the fire department, and that as soon as he could get in, he went into the building and found that the building was burned all over pretty much, everything was charred, black all over, and seemed like the fire had spread all over the building. Witness was then asked this question: "Is it usual for a fire to spread all over a building that way without burning more in one particular place, or not?" Plaintiff objected to the foregoing question, the court sustained the objection, and the defendant excepted. Witness was then asked this question: "Is it usual, or not, for a fire to burn all over a building like that was unless whiskey or some other combustible had been spread all over it?" Plaintiff objected to this question, the court sustained the objection, and the defendant excepted. These several rulings constitute the bases for the 21st, and 22d assignments of error.

Thomas Hardeman being introduced as a witness by the defendant, testified that during the month of January, 1892, he was an insurance agent in Birmingham, Alabama, and represented the defendant; that he remembered the fire inquired about in this case; and after testifying as to some of the facts pertaining to the fire, he further testified that he was present at the time M. J. Feibelman went to his office, when Buckshaw was there, and at the time he made affidavit before Buckshaw. This witness was then asked this question: "How did he sign that affidavit, as M. J. Feibelman or E. Feibelman?" Plaintiff objected to this question, the court sustained the objection, and the defendant excepted. This ruling constitutes the basis of the 25th assignment of error.

Witness further stated that after the affidavit was signed, M. J. Feibelman stated his name was M. J. Feibelman. That that was the first time we knew he was M. J. Feibelman. That he knew Feibelman, but never knew what his initials were. That when he came to have the policy transferred, witness' recollection was that he stated he had bought his brother out and wanted him to sign the transfer of the insurance.

Witness was then asked this question: "He said that he had bought his brother out?" Witness answered: "Yes, sir, I think that was his language." Plaintiff objected to the answer of the witness, and moved to exclude it; which objection was sustained and motion was granted by the court, and the defendant duly excepted. Witness was then asked this question: "Did you or not know at that time that he was acting for the plaintiff in this case?" Plaintiff objected to this question, the court sustained said objection, and the defendant excepted. These several rulings, to which exceptions were reserved, constitute the bases for the 27th and 28th assignments of error.

This witness further testified that he signed the consent for the transfer of the policy by H. A. Feibelman to E. Feibelman, on January 5th. He was then asked the following question: "Whom did you think you were consenting for the transfer to be made to?" The plaintiff objected to this question, the court sustained said objection, and the defendant excepted. This ruling, to which an exception was reserved, constitutes the basis of the 29th assignment of error.

The facts pertaining to the other rulings of the court upon the evidence, which are reviewed on the present appeal, are sufficiently shown in the opinion.

Upon the introduction of all the evidence, the court at the request of the plaintiff, gave to the jury the general affirmative charge in her behalf. To the giving of this charge the defendant duly excepted, and also separately excepted to the court's refusal to give, among others, the following written charges requested by it: (4.) "Even if the jury should find from the evidence that the fixtures were destroyed, they cannot assess the value of said fixtures at exceeding $475, the whole fixtures being insured at $600, and it being admitted by the plaintiff that the cash register, valued at $125, was not destroyed." (2.) "If the jury believe from the evidence that any wine, whiskey, brandy, beer, tobacco, cigars, or other merchandise was destroyed, then it will be for the jury to find from the evidence how much of such liquors or other merchandise was destroyed, and the market value thereof; and if the jury can not find from the evidence the market value of the liquors or merchandise destroyed, then they can not find for the

plaintiff as to such liquors or merchandise." (6.) "Unless the evidence shows that the policy sued on was transferred by H. A. Feibelman to E. Feibelman on the 1st day of January, 1892, they will find for the defendant." (8.) "The court charges the jury that the plaintiff can not recover anything in this suit for loss of or damage to chairs." (5.) "Unless the jury believe from the evidence that the amount of loss or damages caused by the fire was agreed upon or ascertained by the adjuster of the defendant, and that amount is shown by the evidence, they must find a verdict for the defendant." (12.) "The court charges the jury that the evidence fails to show that the policy of insurance sued on was transferred by H. A. Feibelman to E. Feibelman on the 1st day of January, 1892." (27.) "The court charges the jury, that in this case the plaintiff is required to reasonably convince the jury by evidence that an adjustment of the loss was made by the defendant's adjuster, and if she has failed in this, the jury must find for the defendant." (28.) "Unless the evidence reasonably satisfies the jury that the loss in this case was adjusted by defendant's adjuster, they will find for the defendant." (29.) "Unless the jury believe from the evidence that the loss was adjusted by the defendant's adjuster, they will find for the defendant."

LANE & WHITE, for appellant.—It is a general principle, obtaining in all courts of justice, that no aid will be lent to a litigant to reap advantages from a transaction growing out of an illegal purpose. It is true that a man does not forfeit property which has been used for an illegal purpose, but the case is quite different where a party makes a contract with reference to the property with the design to use the contract to further and advance an illegal design, and then seeks to enforce the contract in the courts. In the latter case, the question is not whether the owner shall lose his property, but whether courts will lend their aid to enforce a contract conceived in iniquity and born in fraud. In such case the courts leave the party where it finds him. *Lea v. Cassen*, 61 Ala. 315. And the court will not be governed by the wording of the contract, but will inquire into the whole transaction, and no estoppel will

prevail against the party sought to be charged.—*Robertson v. Robinson*, 65 Ala. 610. And the case at bar comes precisely within the legal principles expounded in these cases.—*Johnson v. Union M. & T. Co.*, 127 Mass. 555; 1 May on Insurance, §71, foot note; *Kelly v. Home Ins. Co.*, 97 Mass. 288.

The question set out in the 14th assignment was clearly legal. If part of the property has been purchased, the title to the property remaining in the purchaser until paid for, and it had not been paid for, then the plaintiff did not own such property and could not recover for its loss.—*Fairbanks v. Eureka Co.*, 67 Ala. 109. The second charge requested by the defendant should have been given.

This charge was nothing more than giving the jury to understand that they must be reasonably satisfied from the evidence what merchandise was destroyed and the value thereof, and we submit that the testimony wholly fails to show what merchandise was destroyed, or its market value. The witness, M. J. Feibelman, was the only one who pretended to testify about the quantity of merchandise in the saloon at the time of the fire, or its value, and he showed himself utterly unable to do so. The refusal of this charge suffered the jury to enter the domain of conjecture as to what merchandise was destroyed and its value. No verdict should be allowed to stand which rests upon such a basis. It devolves on the assured to show the market value of the property destroyed before he can recover anything more than a nominal sum.—*Hanover Fire Ins. Co. v. Lewis*, 16 Ins. L. J. 956.

MORRIS LOVEMAN and BUSH & BUSH, *contra.*—The 8th plea is no answer to the complaint. The policy made separate valuations, and was, therefore, divisible. *Merrill v. Ins. Co.*, 73 N. Y. 452; *Schuster v. Ins. Co.*, 102 N. Y. 260; *Feibelman v. Ins. Co.*, 108 Ala. 180

The evidence sought to be elicited from M. J. Feibelman as to the offer of the adjuster to pay a less sum than the face of the policy, was competent bearing on the question of the waiver of the proof of loss. It is a general rule of law, that if an insurance company offers a sum less than the face of the policy, or denies their liability, this would dispense with the proof of loss.

*Com. Fire Ins Co. v. Allen*, 80 Ala. 577; *Feibelman v. Ins. Co.*, 108 Ala. 180.

The purpose of the question as to the taking of the whiskey from the barrel and throwing it over the fixtures was evidently intended to make it appear that M. J. Feibelman, appellee's agent, destroyed the property. There is not a scintilla of evidence in this record which can be perverted into even intimating that the plaintiff's agent fired the property, with the connivance of the appellee; hence the objection was properly sustained. *Feibelman v. Ins. Co.*, 108 Ala. 180.

HARALSON, J.—1. After this case was reversed on a former appeal, defendant filed additional pleas, numbered 19½, 26, 27, 28 and 29. Demurrers were interposed to these pleas, which were sustained. There was no error in such rulings. The first four of these pleas, as admitted by counsel for appellant, raise substantially the same questions,—that the plaintiff had never procured a license under the laws of Alabama, to carry on the business in which he was engaged, down to and including the time that the property insured was injured or destroyed by fire. We held in our former opinion, and fail to see that we were not correct in so holding, that whether the plaintiff had a license to retail or not, had nothing to do with the insurance.—*Feibelman v. Manchester Fire Ins. Co.*, 108 Ala. 180, 197.

The original complaint in the cause was filed within twelve months after the fire occurred. The 3d count, filed by leave of the court, more than twelve months thereafter, is an amendment of the original complaint, and related back to the date of its filing. There was no error, therefore, in sustaining the demurrer to the 29th plea.—*Evans v. Richardson*, 76 Ala. 329.

The 8th plea seems not to have been passed on in the former appeal. The demurrer to it was properly sustained. It is not an answer, as it professes to be, to the entire complaint. In the policy, separate valuations are made of the fixtures, wines, liquors, etc., and the pool tables, and the complaint so describes them. The insurance as to each was divisible.—*W. A. Co. v. Stoddard*, 88 Ala. 606; *Feibelman v. Manchester, &c.*, 108

Ala. 180, 197; *Merrill v. Ag. Ins. Co.*, 73 N. Y. 42; *Schuster v. The Dutchess County Ins. Co.*, 102 N. Y. 260.

2. The case was tried on issue joined on the pleas to which demurrers were overruled,—the 1st, 2d, 5th, 10th, 11th, 12th, 15th, 16th, 17th, and 18th,—and on issue joined on the replications to the 13th plea. The 1st and 2d of these pleas are the general issue. The 5th sets up, that the plaintiff executed a mortgage on three pool tables, a part of the property insured, which rendered the policy void under the conditions thereof, as to said pool tables. We may pay no further attention, however, to this plea, since there was no effort on the part of the defendant to sustain it. The same thing is true of the 17th plea. The 10th, 11th, 12th, 15th, 16th set up that the plaintiff did not own the policy upon which the suit was brought, and that she was not, at the time of the alleged loss or damage by fire, the owner of the vinous, sprituous and malt liquors, claimed in the complaint to have been destroyed.

The 13th plea set up, that the plaintiff never made proof of loss as required by the policy under which she sues. There were two replications filed to this plea, the one on the 24th, and the other on the 25th May, 1893, the latter being an amended replication. The first was defective, and was afterwards withdrawn. The amended replication set up, "that on, to-wit, the 21st of January, 1892, after the fire occurred, the defendant's adjuster, one A. S. Weatherbee, visited the place where the fire occurred, and examined the plaintiff's books of account, and had plaintiff's agent make an affidavit of the amount of loss and ascertained the loss to be the sum sued for, and offered to pay plaintiff's agent a sum less than the amount claimed under the policy."

The replications afterwards filed to this plea were: "3. That said defendant by and through its adjuster , Weatherbee,refused and repudiated the payment of said policy on, to-wit, January 21, 1892, and stated to plaintiff's agent, that (the) town authorities had informed him that the plaintiff's said agent would be arrested for setting fire to, and burning the property insured in the policy sued on. 4. That subsequent to the fire, to-wit, on the 21st day of January, 1892, the defendant's adjustre, one Weatherbee, visited the place where the fire oc-

curred, examined the plaintiff's books of account, and ascertained (the) loss; had plaintiff's agent to swear to the itemized statement of account of loss, and plaintiff's agent asked him, Weatherbee, whether or not he would discount the amount ascertained, to-wit, the sum sued for, or take the 60 days under the policy, and he then told (the) agent to call at a late hour in the day, and he would give him a check for the amount, and when plaintiff's agent, as per understanding, called on him, he then refused to pay anything on said policy. 5. That said Weatherbee, subsequently offered to pay plaintiff's agent a sum less than the amount claimed under the policy, and this subsequent to the loss by fire and within sixty days from the date of the fire. 6. That defendant denied its liability under said policy, subsequent to the fire and within sixty days from the date of the fire. 7. That subsequent to the loss by fire, the defendant's adjuster, one Witherbee, visited the place where the fire occurred, examined the plaintiff's books of accounts and ascertained the loss, had the plaintiff's agent to swear to the itemized statement of account, and told plaintiff's agent to return that evening, and he would let him know whether he would give a draft for the amount ascertained to be due under the policy or take the usual sixty days, and plaintiff's agent called that evening, to-wit, January 21st, 1892, and the said Weatherbee told him that the company would not pay anything; that the town authorities would have him arrested for arson."

The defendant filed a rejoinder to the first of these two replications, which, on motion of plaintiff, was stricken out. Subsequently, the defendant filed several rejoinders to these replications, to which plaintiff demurred, and the demurrers were sustained. The ruling on these demurrers is not questioned in the assignment of errors.

It will be seen, that the real issues are the pleas of the general issue, on which issue was taken; on joinder of issue to the 10th, 11th, 12th and 16th pleas, and the replications of the plaintiff to the 13th plea, on which issue was also taken.

3. If the objection to the introduction to the power of attorney by H. A. to M. J. Feibelman, was techni-

cally well taken, in that the power was limited to the conduct of the business by the latter for the former, as his general agent, and did not extend to making a sale of the property, and that its execution was not duly proved, the action of the court in overruling it was error without injury. The testimony tended without conflict to show, that there was a bill of sale of the property covered by the policy to plaintiff, signed by H. A. Feibelman, the insured, and that he, being in Birmingham at the time, knew that M. J. Feibelman had transferred the policy in his name to plaintiff. This was a ratification of the transfer. Besides, this transfer was made on the 1st of January, 1892, and on the 5th of January, thereafter, the insurance company gave its consent to the transfer by indorsement regularly and duly entered on the policy.

4. The policy contained a list of the property insured, by separate valuations,—"$600 on his (assured's) fixtures, side-board, glasses, beer cooler, screen, cash register, show cases and other fixtures; $200 on his pool tables, being $100 each; $700 on his stock of wines, brandy, beer, tobacco and cigars, and such other merchandise, not more hazardous, as is usual in this trade, all contained" in the building described. The witness, M. J. Feibelman, was asked to tell what fixtures were in the store, and he was allowed to answer, "two pool tables and some chairs." The defendant objected to the statement that there were some chairs, because the chairs were not fixtures, and moved to exclude what the witness said about the chairs, which objection and motion the court overruled. The same witness afterwards estimated the fixtures, all together, as worth about $900. Furniture and movables are not fixtures.—May on Ins., §420. Moreover, the policy described particularly the movable personal property and furniture that was insured, beyond which it specially provided, the company should not be responsible in case of loss, and it did not, therefore, include any other. The objection as to the chairs as fixtures was well taken, and the motion to exclude should have been granted.

5. The replication of the plaintiff to defendant's 13th plea, as has been seen, set up, that there had been an ascertainment of the loss by and between the defend-

ant's adjuster and plaintiff's agent, M. J. Feibelman, from an examination of plaintiff's book of accounts, and that the adjuster afterwards informed the agent, that he would not pay anything, as the town authorities would have him arrested for arson; that subsequently, after the loss by fire, and within sixty days therefrom, he offered to pay a sum less than the amount claimed under the policy, and that the defendant took issue on such replication, after demurrer overruled, without assignment of error for the overruling of the same. When plaintiff offered to prove by the witness, Feibelman, that Weatherbee, after the interview last referred to, and after Feibelman had been put in jail, came to him and "offered $175, and stop all criminal proceedings," and Feibelman refused, the defendant objected and the court overruled the objection and allowed the witness to so state. This was but an offer of proof to establish the truth of the replication, and it was admissible for the purpose. If there was error in the ruling, it went back to the ruling on the demurrer, for issue having been joined on the replication, if there was error in overruling the demurrer to it, the plaintiff was entitled to introduce evidence tending to establish its truth.—108 Ala. 198, 200. On the former appeal, the evidence on this point, and the conditions were different from what now appear.

6. There was no error in allowing the question to the witness, M. J. Feibelman: "After the sale was made from H. A. Feibelman to E. Feibelman, on the 1st of January, 1892, was there or not other goods purchased and put into the stock of goods?" He answered that there were, and stated what goods had been so purchased. The objection is insisted on, for the reason that defendant could not be held responsible for new goods bought after the issuance of the policy and before its transfer to plaintiff. The goods were insured, as the evidence shows, in a saloon which was being operated by the assured at the time, and the policy, of course, covered new goods of the kind insured, bought and brought in, not exceeding in value the amount insured. It was, as is termed, a shifting policy.—7 Am. & Eng. Encyc. of Law, 1008.

7. For the purpose of passing on several assignments of error to be considered, it may be stated, that there was evidence tending to show that the alleged sale to the plaintiff was simulated. She lived in Mississippi, and as M. J. Feibelman testified, had never been in Birmingham. He acted as her agent, according to his account, in the purchase of the salooon from his brother, H. A. Feibelman, who owned it. It is not made to appear, that she ever knew of this transaction between H. A. and M. J. Feibelman. The bill of sale was executed to her by H. A. Feibelman on the 1st of January, 1892, on the recited consideration of $1,714.02, for the fixtures, furniture and stock of goods. M. J. Feibelman testified that the trade was closed up, with only a cash payment of $175 to $225, and an indebtedness of $500 due by H. A. to E. Feibelman, but how the balance was paid, he could not tell, and that he could not tell when H. A. became indebted to E. Feibelman. It was further shown, that he made an affidavit before D. C. Buckshaw, a notary public, as to the value of the goods destroyed, and instead of signing his own name to the affidavit, he signed E. Feibelman's name thereto. The evidence further tended to show that he set fire to the saloon; that he and H. A. Feibelman by themselves, on the 31st of December, 1891, took an inventory of the stock; that the policy was transferred to the plaintiff on the 5th of January, the fire occurring on the 10th of January, 1892, and that there was but little of the stock on hand at the time. The evidence also further tended to show that a new barrel of whiskey had just been purchased and brought into the store; that on the night of the fire it contained but little, if any whiskey, and that the floor, fixtures and goods, bore an appearance, to indicate that a blaze of fire had passed over them, scorching some and destroying others of them.

The 13th, 21st and 22d assignments of error, all of a class, are without merit. The questions if answered in the affirmative, were irrelevant to the issue of the *bona fides* of the sale of the goods to the plaintiff and her ownership of them.

8. The 14th assignment of error was well taken. On cross-examination of this witness, he stated that he had bought a mirror and screen from the Rothschilds in

Cincinnati at $400, and that they had been paid for. Defendant further asked him, "Isn't it a fact that the Rothschilds retained title until they were paid for, and that they had not been paid for?" The court sustained a general objection to this question. In this there was error. The defendant was entitled to an answer.

9. The bank book of plaintiff showing deposits in the South Side Savings Bank in 1891 was introduced in evidence by plaintiff for the purpose of showing, that she had means of purchasing the stock of goods, and her ownership of them. It was relevant for this purpose, and we cannot presume without more than is disclosed, that it was improperly admitted by the court.

10. Assignments 17, 18, 19, 20, 25 and 28, are well taken. The objections to the several questions were general—they were not patently illegal. On the other hand, the answers, if as defendant desired, bore on the issue of the *bona fides* of the sale of the goods to plaintiff and would have tended to show that M. J. Feibelman or his brother, and not the plaintiff was the owner of the goods and policy.

11. The evidence for plaintiff tended to show, that the barrels in the saloon were so badly injured by fire, that all the whiskey in them ran out and was destroyed; and that on the part of defendant, that the barrels were not thus injured but were empty before the fire occurred. This proof was submitted on each side, touching the amount and value of liquor destroyed by the fire. Defendant asked the witness, Kilpatrick, who went, as is shown, as soon as he could get into the house, what examination he made of the barrels. He stated that he examined them, and was satisfied that there was nothing in them. To the direct question propounded, he stated: "I examined until I was satisfied there was no no whiskey—couldn't find any." The plaintiff made a general objection to the whole of this answer. We find no fault with the answer. It tended to show how complete his examination was, and that there was no whiskey in the barrels. It was error to exclude the answer.

12. The object of the inquiry made the basis of assignment 27, was to show that M. J. Feibelman, and not the plaintiff, was the owner of the policy. The matter being testified about by the witness, Hardeman, was as

to what M. J. Feibelman swore, when he made the alleged affidavit of loss before the notary public, Buckshaw. The answer was admissible for the purpose intended, and should not have been excluded. For the same reason, the question, the basis of assignment 28, should have been allowed to be answered; but the other question, the basis of the 29th assignment, was properly disallowed. It called for the uncommunicated thoughts of the witness.

13. The court should not have given the general charge for the plaintiff. The evidence was in such conflict, as rendered it improper to do so.

14. There was no error in that part of the court's general charge, in which it instructed the jury: "If the property or any part of it was so damaged by fire as to render it useless for the purposes for which it had beeen used, then that is a destruction within the meaning of the law." If rendered useless for the purposes for which the property was used, the plaintiff's right to recover insurance for what was so insured was complete. If what remained of the property so injured, was of any value, the insurer was entitled to it.

15. The 4th charge asked by defendant was properly refused. It is abstract. It was not admitted that the cash register was worth $125. The proof was, that it was worth about $100 or $125.

The next succeeding charge, numbered 2, was a proper one, and should have been given. If there was no evidence upon which the jury could satisfactorily base a finding, as to the value of the property mentioned, then it would follow, that they could not find for the plaintiff as to such property.

There was error in refusing charge 8. The policy did not cover any chairs, and yet the court had let in proof that there were some chairs in the saloon, at the time of the fire; and this instruction was, therefore, proper.

The 3d count alleged the transfer of the policy by H. A. Feibelman to plaintiff on the 1st January, 1892, the date being stated under a videlicet. The proof showed its transfer on the 5th of that month. Charges 6 and 12 requested by defendant contained instructions for a verdict for defendant, unless the proof showed such

transfer on the 1st, as averred. The proof of the 5th of the month as the date of the transfer, did not constitute a variance, and the charges were properly refused. 1 Gr. Ev., §§60, 61.

Charges 5, 27, 28 and 29 requested by defendant, were asked as applicable to the whole complaint, and not confined to the first count, which alleged an adjustment. Those charges, if good as to the first count, were certainly not good as to the other count, which was in Code form on the policy itself.

It is unnecessary to review the remaining very numerous charges requested by defendant. It is sufficient to say of them, that they are either abstract, calculated to confuse and mislead the jury, or are plainly illegal.

Reversed and remanded.

BRICKELL, C. J.—I concur in the reversal of the judgment in this case, and in the opinion of the court upon several of the points discussed. But there are several questions the case involves, in reference to which I do not concur in the conclusions of the court.