(135 So. 179)
### PEARCE v. HUBBARD.
#### 6 Div. 590.

Supreme Court of Alabama.

May 14, 1931.

Rehearing Denied June 18, 1931.

232

Miller, Graham & Wingo, of Birmingham, for appellee.

Lange, Simpson & Brantley and Reid B. Barnes, all of Birmingham, for appellant.

**SAYRE, J.**

Action for damages for the alleged breach of a contract—a so-called lease-sale contract, —for the sale by defendant, appellant, to plaintiff of two lots in Tarrant City. The complaint alleges that the parties entered into the contract May 27, 1924. In addition to a cash payment of $40, plaintiff agreed to make payments of $20 each on the 1st day of each of the succeeding seventy-three months. Plaintiff alleges payment of thirty-four of the notes, whereupon defendant sold and conveyed the property to one Gooch. It is alleged that the notes were made payable at the office of the Tarrant City Savings Bank, and provided that, upon default in any payment, the payee, defendant, should have the right to re-enter and annul the contract. The breach alleged is that defendant failed and refused to surrender two notes which matured March 1, 1927, and April 1, 1927, upon payment thereof by plaintiff, and failed and refused to "present said notes given for the purchase price of said real estate at the office of the Tarrant City Savings Bank for payment when and as the same became due." And the further allegation is that, although plaintiff "has complied with all the provisions of said contract on his part and has at all times been ready, able and willing to pay said notes therein (in the contract) mentioned when due upon presentation at the place of payment therein named, the defendant has failed to comply with said contract on her part and has breached said contract in this: she has failed and refused to present said notes mentioned in said contract or any of them at the place of payment so that the plaintiff might pay the same," and, on March 1, 1928, sold and conveyed the lots to one Gooch.

The foregoing statement of the complaint along with the ground of demurrer to be noted will suffice to disclose the main point at issue between the parties. By demurrer, defendant made objection to the complaint that it counted on an anticipatory breach of contract. Prof. Williston expresses the opinion that to hold a party to a contract liable on what is known as an anticipatory breach is to hold him to a promise he never made. 3 Williston on Contracts, § 1321. This action was commenced approximately two years prior to the time when defendant was to make title, provided plaintiff in the meantime made monthly payments according to the stipulation of the contract. It is enough to quote the text of 13 Corpus Juris, 651, where a great number of adjudicated cases is cited, as follows: "Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has according to the great weight of authority, an option to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach. The rule is the same whether the contract is wholly executory or has been partially executed." And further in the same text it is stated that, where there has been a renunciation of an executory contract by one party, the other may elect "to treat the renunciation as an immediate breach and sue at once for any damages which he may have sustained." In the case alleged in the complaint, defendant had put it beyond her power to perform her contract with plaintiff. Prof. Williston, 3 Contracts, § 1326, speaking of Ford v. Tiley, 6 B. & C. 325, says: "One of the first cases relied on as establishing the doctrine of anticipatory breach involved prospective inability to perform because of a lease to a third person of land contracted to be leased to plaintiff," and seems to concede the propriety of the doctrine in such case at least by saying further in immediate connection: "In such case, however, the inability was caused by a voluntary act of the defendant, and this act indicated intention not to perform as well as inability to perform." We note further that in 6 R. C. L. p. 1024, it is written in the course of a rather elaborate discussion of the question now presented for decision: "A majority of the courts have reached the conclusion that a renunciation which amounts to a refusal to perform the contract at any time gives the adverse party an option to treat the contract as broken, and to sue immediately, notwithstanding the fact that under the terms of the contract the time for performance has not arrived." On the face of the complaint in this case, no sufficient reason appears why plaintiff should continue to perform nor any why he should defer his action for a wrong otherwise beyond remedy.

We find nothing to the contrary in McCormick v. Badham, 191 Ala. 339, 67 So. 609. The suit there involved the sale of corporate stock. The court seems to have held that the complaint was defective, in that there was no averment of any fact wherefrom relief of plaintiff from performance of a condition precedent resulted. In the case here under consideration, no sufficient reason appears why

plaintiff should continue to pay for property he could in no event acquire nor any why he should defer his action for a wrong otherwise beyond remedy. Hawkins v. Merritt, 109 Ala. 261, 19 So. 589; Chandler v. Wilder, 215 Ala. 211, 110 So. 306.

Mutual Loan Society v. Stowe, 15 Ala. App. 293, 73 So. 202, holds nothing to the contrary of what has been here written. The opinion very clearly states, in one alternative, that the party injured by the repudiation of a contract to be performed in the future may treat the contract as rescinded and sue accordingly. This is not to deny that in such case an immediate action may be maintained as for a breach of contract.

■ No sufficient reason appears why the vendor who has voluntarily disabled himself to make title should have notice, other than by suit brought, of the vendee's purpose to reclaim money paid or other damages incurred by the vendor's breach of his contract.

■■ The contract for breach of which appellee brought suit provides: "The party of the second part (plaintiff) agrees to pay all taxes on the above described property during said term"—the time in which payments were to be made—"as the same becomes due; and also agrees to pay all assessments for street and sidewalk improvements, should any be made against said property." In view of defendant's act in putting it wholly out of her power to carry out the stipulation for title to plaintiff, as alleged, the allegation of the first count that plaintiff had "complied with all the provisions of said contract on his part," and of the second count that "he has been at all times ready, able and willing to perform said contract and comply with all the provisions thereof on his part," are considered to be a sufficient allegation of performance on plaintiff's part, though he must have shown his readiness and ability to perform, even though defendant had put it out of her power to perform. At any rate, it appears to have been so decided in Moss v. King, 186 Ala. 482, 65 So. 180.

■ Plaintiff may have failed to prove payment of taxes and street assessments, as defendant, appellant, alleges in her brief, but that we consider to be of no moment on this appeal, for the reason that there was no evidence on that point, and defendant based her action in declaring a forfeiture on a wholly different ground, to wit, plaintiff's failure to pay the notes which he had given for the purchase money.

■■ The judgment here is that plaintiff complied with the terms of his contract. The notes given as part of the lease-sale contract, as well as the contract itself, witnessed a promise on the part of plaintiff to pay at the Tarrant City Savings Bank. The evidence shows that plaintiff at all times before the bringing of his suit and his election thereby to treat the contract in question as breached by plaintiff maintained a balance in the named bank more than enough to discharge his monthly notes, and that defendant failed to collect such notes as they became due before suit brought, by reason that she failed and refused to present them for payment at the bank, and that, by reason of a disagreement which arose between the parties—the particulars of which need not be stated—plaintiff refused to make payment at a different place at the same time indicating his willingness to pay at the designated place of payment. That was his right under the contract, and the statute, section 9096 of the Code, provides that, "if the instrument"—the notes in this case—"is, by its terms, payable at a special place, and he [the payor] is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part." That statute was enacted for the purpose of making clear the liability of indorsers under the Negotiable Instruments Law; as to the maker and drawer of negotiable instruments, it is nothing more than a declaration of the common law. 8 Corpus Juris, 525.

■■ As for the notes falling due after the alleged failure to present at the designated place of payment and after defendant's breach, by sale of the property to Gooch and plaintiff's suit brought; the judgment is that plaintiff was under no duty to prove ability or willingness to pay, nor, in view of the conclusion already stated, is it considered to be a matter of consequence that plaintiff remained in possession.

■ Over defendant's objection plaintiff was allowed to put in evidence a passbook purporting to be a passbook issued to plaintiff by the Tarrant City Bank. In 48 Corpus Juris, 636, it is said that "a receipt is ordinarily not evidence of payment thereby acknowledged as against strangers thereto; but there are exceptions." . In Manchester Fire Assurance Co. v. Feibelman, 118 Ala. 328, 23 So. 759 (paragraph 9 of the opinion), it was ruled that plaintiff's bank book showing deposits was admissible in evidence as going to show that plaintiff had means of purchasing the stock of goods which had been destroyed by fire—this in an action on a policy of insurance in which the bank was not concerned. That decision is in point, and sustains the ruling of the trial court.

■ The court admitted in evidence ledger sheets of the bank—this, of course, to show that plaintiff had on deposit funds with which to pay his notes when due, such notes being made payable at the bank. The case cited last above suffices to uphold this ruling. The bank had no interest in having its books show a credit to which a depositor was not entitled; rather the contrary. It is not considered that

section 7701 of the Code sheds any light on the question here presented. It is not in point.

■ Plaintiff was allowed, over defendant's objection, to testify that he was willing at all times to pay his purchase-money notes. A great number of cases decided by this court may be found cited on page 613 of 22 Corpus Juris, which establish in this jurisdiction at least the rule that a witness may not, on direct examination, testify to his intent, reason, motive, mental operation, thoughts, wishes, or what not of that general character. This testimony was erroneously admitted. But the case was tried by the court without a jury, the court here has before it all the evidence adduced at the trial, and is of opinion that the presence or absence of this piece of evidence would not have changed the result. · It is therefore held for error without injury. In what is here said it is not intended to impeach the soundness of those adjudications in which it has been held that a witness may state his judgment as to the existence vel non of collective facts where the judgment as to them is based upon a knowledge of all the constituent elements and it appears to be impracticable to place before the jury all the details on which the collective judgment is based; nor is it intended to impeach the rule that an adversary party may on cross-examination ask such questions; but a witness may not state his conclusion or state of mind as to the very fact in issue between the parties. Brandon v. Progress Distilling Co., 167 Ala. 368, 52 So. 640.

■ The trial court fixed the measure of damages at the market value of the land as of March 1, 1928, less the unpaid part of the purchase price, $680, and $100, the sum assessed against the property in the meantime on account of a sewer improvement. As for the principal item, this was not error. Defendant's (appellant's) argument appears to be based upon the proposition, heretofore decided adversely to appellant, that no action could be maintained as for a breach in advance of the day of the final payment to be made. As for that there is no use to repeat. As for the item of $100 charged to defendant on account of the sewer improvement—as we infer from the trial court's finding of facts— the court here does not find that defendant was or is responsible for that improvement, and that the cost of such improvement, considered apart from any contribution to the value of the property thereby caused, should not have been charged against defendant. The trial court properly, except as heretofore noted, assessed plaintiff's damages at the market value of the land at the time of the purchase, that is, at the time of defendant's breach of the contract, less the amount of the agreed purchase price then due and unpaid.

Greenberg v. Ray, 214 Ala. 481, 108 So. 385; Phelan v. Tomlin, 164 Ala. 383, 51 So. 382; Pinkston v. Huie, 9 Ala. 252.

The facts alleged in plea 11 and other pleas of similar character were not sufficient to discharge defendant of the duty to present her notes at the bank, the stipulated place of payment, when it appeared to defendant, as it fairly did in the evidence, that plaintiff would not pay elsewhere than at that place; no modification of the original contract to that effect being alleged.

■ It appears from the record, on fair interpretation, that the trial court charged defendant with $100, the cost of a sewer constructed upon the property by plaintiff while in possession under his contract of purchase. The sewer, it may be assumed, was a contribution to the value of the property, which value at the time of the breach of the contract to convey would properly have figured in the assessment of damages. The court's finding of facts would seem to indicate that this item was considered as an independent item of damage, and was included in the total damage assessment. It was a proper item of damage only as it figured in affecting the value of the property at the time of the breach. But, on the record, including the finding of fact, it does not appear that defendant was placed at any disadvantage, i. e., was required to pay more than the damage properly assessable against her, by the court's assessment of the sewer at $100.

The judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.