29 So.2d 141

### W. H. KIRKLAND CO. v. KING.

### 7 Div. 903.

Supreme Court of Alabama.

Feb. 6, 1947.

Wm. C. Bibb, of Anniston, and Gamble & Lapsley, of Selma, for appellee.

C. W. Stringer, of Talladega, and Merrill, Merrill & Vardaman, of Anniston, for appellant.

FOSTER, Justice.

The question in this case, presented in a petition for a declaratory judgment, is whether appellee was justified in cancelling a contract with appellant as exclusive sales

agent for his product proposed to be manufactured by appellee, and before any such product was manufactured, on the ground that appellant had acquired a substantial interest in a competitive business.

The contract was in writing, dated May 9, 1944, and was the result of an agreement whereby appellee purchased from appellant certain equipment, machinery, etc., for the manufacture of cast iron soil pipe, fittings and kindred plumbing specialties, then situated at Vincennes, Indiana, to be removed to Anniston, Alabama, and there set up and operated.

Appellant had not operated the plant, but bought it at a sheriff's sale, and then sold it to appellee, with the understanding that he was to be the exclusive sales agent of appellee in respect to the product. The contract resulted from that understanding.

Appellant had for many years been engaged in the business of selling such products, and had many customers in that line. Appellant was to have a commission of five percent, and was to continue for at least three years from the date when the foundry so purchased should be placed in operation.

There were relations created by the contract as to which some contention is made in brief, but, they were decided in favor of appellant, and are not involved on this appeal. This has particular reference to the matters set up in the amendment to the petition. Compare Sherrill v. Alabama Appliance Co., 240 Ala. 46, 197 So. 1.

Appellant was and is a partnership composed of W. H. Kirkland, his wife Mrs. Almeda Kirkland, and his daughter Mrs. Elise Kirkland Weatherly.

Appellant at the same time had a contract of a similar sort with Russell Pipe and Foundry Company, with its place of business at Alexander City, Alabama. Appellee knew of that contract, and made no objection to it. But appellant had not been engaged in the manufacture of such products nor interested in their manufacture.

Appellee commenced the removal of the plant to Alabama in July or August, 1944, after he had bought it in May, 1944. But he did not begin the construction of the building to house the plant until December, 1945, having obtained a location for it shortly before. The delay was because of the War, when he could not get material and labor necessary for it.

On June 9, 1945, appellee wrote a letter to appellant, stating that "you have purchased or taken over a foundry at Alexander City, and I do not think that an exclusive sales agency agreement would be satisfactory with me when the party was interested directly or indirectly in a foundry such as is the case of the Alexander City institution." This referred to the acquisition by appellant of an interest in the Russell Pipe and Foundry Company, supra, which was then engaged in the manufacture and sale of products which would be in competition with the business to be done by appellee with respect to the products covered by the contract between appellant and appellee. There was an answer and further correspondence, appellant insisting that appellee had no right to terminate the contract, and appellee continuing to insist on its immediate termination.

On June 11, 1945, the Russell Pipe and Foundry Company was incorporated. The shareholders were W. H. Kirkland 10 shares, president; John F. Weathers 125 shares, vice-president; Howard L. Weathers 90 shares, secretary; T. H. Riley 35 shares, treasurer; and W. H. Kirkland Company, a partnership, 240 shares.

This petition for a declaratory judgment was filed at law on April 5, 1946. At that time appellee was constructing the plant. Originally it was contemplated to have it finished about ninety days after buying it, but it did not get into operation until about August 1, 1946.

On June 25, 1946, while this suit was pending, and about a year after appellee undertook to cancel the sales agency agreement, W. H. Kirkland and W. H. Kirkland Company, a partnership, endorsed a transfer to W. S. Weatherly, the son-in-law of W. H. Kirkland, and husband of one of the members of that partnership, the two stock certificates for 10 and 240 shares, respectively, in Russell Pipe and Foundry Company, and on that day a new certificate was issued to W. S. Weatherly for 250

shares. On that day the minutes show a meeting of the stockholders and directors wherein the resignation of W. H. Kirkland as president and director was accepted, and W. S. Weatherly was elected president and director. The minutes do not show any meeting since that time.

Mr. Kirkland testified that he sold his interest and that of the partnership, which was half of the stock, to his son-in-law, W. S. Weatherly, for $45,000, of which $12,500 was paid in cash, and the balance in notes payable in one, two and three years with interest. The notes are not secured by a pledge of the stock or otherwise, but he considers them collectible. That he has no connection with the company now except as sales agent.

The trial was had on September 23, 1946, before the presiding judge on evidence taken in open court. And upon the basis of principles of law cited in his opinion, the judge found and decreed that appellant had a right to cancel the agency contract, and did so effectually on June 9, 1945, by the letter to which we have referred.

█ It is to be noted that this is only a declaratory judgment, and not open to the objection urged upon us that it is at law which cannot grant the relief of rescission. But as we interpret the decree, it only declares that appellee had the right to cancel the contract and did so, and not that the court granted affirmative relief in that respect.

The question reverts to the proposition of whether on June 9, 1945, at a time when appellant had a substantial interest in a competitive business, appellee had a right to terminate the contract before he had begun and completed the construction of his plant, and before operations had begun under the contract, when it is claimed by appellant that by the time such operations began, pending this suit, he had, also pending this suit, undertaken to dispose of his interest in the competitive business.

The legal principle relied on and mentioned in the opinion of the trial court was restated and approved in an opinion by this Court in Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74, 77, as follows:

" 'The courts are agreed that where the business undertaken by the servant is of a competitive nature, which tends to bring his personal interest in conflict with his duty to his master, with resultant injury to the master's business, he may lawfully be discharged before the expiration of his term of service. * * *

" ' "Manifestly, when a servant becomes engaged in a business which necessarily renders him a competitor and rival of his master, no matter how much or how little time and attention he devotes to it, he has an interest against his duty. It would be monstrous to hold that the master is bound to retain the servant in his employment after he has thus voluntarily put himself in an attitude hostile to his master's interests." And the fact that he has given his entire time to the service of the master conducting his separate business through agents was held to be immaterial, the court further saying: "The fact may be, in certain cases, that, notwithstanding the servant has engaged in a rival business, still he has given his whole time and attention to the business of his master. An attempt was made to show that this is such a case. But the existence of that fact will not take a case out of the rule above stated, for the reason that the servant would have an interest against his duty."

" 'The reasons on which the rule is based were stated in Tozer v. Hutchison, 12 N. Bruns. 548, as follows: "A person who enters into the service of another undertakes to bestow the same care, attention and diligence as if the business were his own. This the plaintiff could not do while he had an interest as partner in a business of the same description as that in which his employer was engaged. There would necessarily be a conflict between his duty and his interest." ' "

This was quoted from Ann.Cas.1916A, 1032-1033, and is otherwise well supported. 35 Amer.Jur. 480, § 47; 39 Corpus Juris 82, 83, § 81; 2 Corpus Juris, page 536, § 160, page 545, § 176; 2 C.J.S., Agency, §§ 74, 84.

But it must be noted that appellant acquired the competitive interest before appellee began to operate, and at a time when

there was no competition because appellee was not then producing, and the time for the services of appellant had not arrived. So that up to August 1, 1946, appellant had not been engaged in any business which was in competition with appellee's business actually conducted under the contract. The decree was rendered September 23, 1946, and at a time when appellee was operating and at a time when the Russell Pipe and Foundry Company was a competitor.

■ We doubt not that if a 'party to a contract "comes under an involuntary disability to perform his obligations" and then removes the disability previous to the time appointed for its performance, such disability so removed would not justify its cancellation. 17 Corpus Juris Secundum, Contracts, § 470, p. 972, Note 70. But when a party voluntarily places it out of his power to perform a contract on his part, it is a breach although the time has not arrived for its performance. 17 Corpus Juris Secundum, Contracts, § 470, p. 971, § 430, p. 912; Pearce v. Hubbard, 223 Ala. 231, 135 So. 179.

■ On June 9, 1945, appellee had not begun the construction of his plant. But he then had a right to make plans for the disposal of his products when they were to be produced. He had a contract with appellant for that exclusive right. Appellant voluntarily put himself in position where if continued it would be optional with appellee whether the services of appellant would be used under the contract. They had correspondence, in none of which did appellant propose to dispose of his adverse interests, but showed a purpose to hold it. If appellee was to take advantage of such situation, he was required to act promptly. 17 Corpus Juris Secundum, Contracts, § 431, p. 913.

In Pearce v. Hubbard, supra, the vendor conveyed to another the property under contract of sale. Held to be such a breach as justified suit two years before the time for conveyance, although of course he might have reacquired the property by the time of performance, but manifested no intention to do so.

■ In this case, when the attention of appellant was called to the inconsistency of his position by having acquired a competitive interest, he did not offer to change that status, and did nothing looking to such a change until June 25, 1946, which was after the instant suit was filed. And even then the disposition he made was open to serious contention that it was only colorable. The sale was to his son-in-law. His daughter, the wife of this son-in-law, is one of the parties to the sales agency agreement, being a partner in the business of appellant. The office manager of appellant, Howard L. Weathers, who became secretary of the Russell Pipe and Foundry Company, and a large stockholder, is a brother of John F. Weathers, vice-president and manager of the Russell Pipe and Foundry Company. The son-in-law is its president and director. We do not think that status would remove the cause which justified the cancellation of the contract if it were then permissible to do so. The human impulses which are influential in such matters remained as before. The correspondence showed an intention on the part of appellant not to dispose of his competitive interest or to change his interest in such a way as to relieve him of the burden of a situation he had assumed in respect to his contract with appellee. It indicated a purpose to keep it, contending that it did not justify a cancellation, and would not do so by continuing to hold it. Therefore appellee had the right to act as though that status were permanent, and continued in substance and effect, notwithstanding a colorable change in name.

■ Moreover, if there is a cause for the cancellation of a contract, duly acted on and the contract thereby rightfully cancelled, a subsequent change of circumstances will not restore the contract except by mutual consent. 17 Corpus Juris Secundum, Contracts, § 472, subsec. b (5), p. 979.

The judgment of the trial court so holding is affirmed.

Affirmed.

GARDNER, C.J., and LAWSON and STAKELY, JJ., concur.