Plaintiff appeals from a judgment for defendants on their counterclaims for breach of a lease and of a contract. We affirm.
In July 1971, defendant, Hartzog Broadcasting, Inc., (lessee) assigned its lease on a suite of offices in the Milner Building in Mobile to plaintiff, Southland of Alabama, Inc., (assignee) as part of a transaction in which Hartzog (lessee) also sold radio station WLIQ to Southland. Defendant Julius E. Marx, Inc., (the owner's leasing agent, herein "lessor") had leased the offices to Hartzog (lessee) in 1970 for a term of five years ending June 30, 1975. The rent was $610 per month, $305 to be paid in cash and $305 to be paid in advertising time.
The lease provided that the rent would be paid promptly when due, that the lease could be assigned only with the written consent of the lessor, and that in the event of an assignment of the lease the lessee would remain liable for payment of the rent for the entire term. *Page 129 
On February 26, 1972, Marx (lessor) wrote Southland (assignee) declaring the lease in default for late payment of rent, for failure of Hartzog (lessee) to obtain written consent to the assignment of the lease, and for Southland's failure to confirm that the lessor had the right to use the "past due" advertising time. The letter declared the lease terminated, ordered the premises vacated within thirty days from March 1, and demanded $610 per month in cash for the duration of Southland's occupancy.
Southland (assignee) did not vacate the offices within the time set, but, after negotiations with Marx (lessor), began paying $610 per month in cash. Southland (assignee) deducted $304 per month from its payments to Hartzog (lessee) on the contract for the sale of WLIQ in order to pay the increased cash rental.
In February 1973, Southland (assignee) vacated the premises without giving Marx (lessor) oral or written notice.
Marx (lessor) then filed suit against Southland (assignee) on the lease to collect the rent for February and March 1973. Whereupon, Southland (assignee) brought this present action against Marx (lessor) and Hartzog (lessee) for an injunction against the action brought by Marx and for a declaratory judgment adjudging: that the assignment was binding on Marx in spite of Hartzog's failure to obtain written consent; that Marx breached the lease; that Marx's letter of February 16, 1972, terminated the lease; that Marx's breach was caused by Hartzog's failure to obtain written consent for the assignment; and, that Hartzog's failure was a breach of the contract for the sale of WLIQ. Marx (lessor) counterclaimed for the amount due on the lease, and Southland (assignee) impleaded Hartzog (lessee), who counterclaimed for the amount due on the contract of sale.
The trial court denied the equitable relief sought by Southland (assignee) and awarded Marx (lessor) $19,459 and Hartzog (lessee) $13,084. (Apparently, $9,729 of the award to Hartzog (lessee) was intended as reimbursement for a judgment which Marx (lessor) was awarded against Hartzog (lessee) on a cross-claim based on Hartzog's liability for payment of rent for the entire term of the lease.)
Southland (assignee) appeals.
 I. Marx's Counterclaim Against Southland
Southland (assignee) urges this Court to declare that the lease was terminated as of February 16, 1972, when Marx (lessor) wrote Southland declaring the lease in default and terminated, and that thereafter Southland was a tenant-at-will, liable only for actual use and occupation of the premises, which terminated in February 1973.
The trial court found that, after the negotiations, Southland (assignee) agreed to pay $610 per month cash rental for the remainder of the lease term. On the basis of this finding, the trial court concluded that the lease was not terminated on February 16, 1972, but that it was modified, and that the modification affected only the rental provisions of the lease.
The trial court's finding was based on the following evidence: a letter from Southland (assignee) to Hartzog (lessee) stating that it was going to pay Marx (lessor) $610 cash per month and was going to deduct $305 per month from its payments to Hartzog and that it hoped that a better arrangement could be worked out but it was about to be evicted; a letter from Marx (lessor) to Southland (assignee) acknowledging receipt of a copy of Southland's letter to Hartzog and stating that Marx agreed to accept $610 per month cash for the remainder of the term; testimony that Marx permitted Southland to continue to pay $305 for an additional month only because it expected Southland to remain for the entire term; and, Southland's payment of $610 per month through January 1973.
Southland urges this Court to declare that any attempt to revive the original lease after its termination or to create a new lease at the increased cash rental was barred by the statute of frauds, since there was no writing signed by Southland, the *Page 130 
party to be charged. Southland contends that the doctrine of part performance does not avoid the requirement of a writing in this case because its continued occupation of the premises was attributable to a tenancy by the month, not to a revival of the original lease.
The heart of Southland's argument is that Marx's letter of February 26, 1972, terminated the lease as a matter of law and that consequently Southland's holding over must be attributed to a new agreement. We do not agree.
Notice to vacate leasehold premises may be waived or revoked by the landlord with the consent of the tenant. Speer v. Smoot,156 Ala. 456, 47 So. 256 (1908); Annot., 120 A.L.R. 557; 51C C.J.S. Landlord and Tenant § 89 (7). Cf. W.H. Kirkland Co. v. King,248 Ala. 643, 29 So.2d 141 (1947). Therefore, such notice does not necessarily terminate a lease.
In this case, the notice to vacate was never enforced by lessor Marx. To the contrary, Marx (lessor) accepted payments of rent subsequent to the date given in the notice for vacating the premises and stated in a letter to Southland (assignee) that it would accept $610 cash per month for the remainder of the term of the lease. Marx's actions constituted a waiver or revocation of its notice to vacate. Speer v. Smoot, supra.
Furthermore, the trial court's finding that Southland agreed to pay $610 cash for the remainder of the term indicates that Southland consented to Marx's revocation or waiver of its notice to vacate.
Although the issue as to whether Southland (assignee) did consent to a continuation of the lease or to a month-to-month tenancy is disputed, we cannot say that the trial court's finding is clearly erroneous. See Rule 52 (a) ARCP. In fact, Southland's failure to disclaim any intention to stay for the remainder of the term upon receiving Marx's letter stating that Marx agreed to accept $610 cash per month for the remainder of the term is strong support for the trial court's finding.
Modification of the terms of a lease upon the insistence of the landlord is not a repudiation of the lease by the landlord and thus does not prevent a waiver or revocation of notice to vacate.Vinyard v. Republic Iron Steel Co., 205 Ala. 269, 87 So. 552
(1921).
Because Marx's notice to vacate was revoked or waived, the lease was not terminated. Consequently, there was no new agreement and no need for an additional writing to satisfy the statute of frauds.
Further, there was no need for a writing evidencing the modification of the terms of the lease, because a lease may be modified by oral agreement. Rudder v. Trice, 236 Ala. 234,182 So. 22 (1938); Messer v. Dupuy-Burke Realty Co., 226 Ala. 438,147 So. 193 (1933).
 II. Hartzog's Counterclaim Against Southland
Southland (assignee) urges this Court to declare that Hartzog (lessee) breached its contract with Southland by failing to obtain the written consent of Marx (lessor) to its assignment of the lease and that Hartzog is therefore liable to Southland for $305 per month for twelve months, the amount of its increased cash payments to Marx.
The trial court found that Marx had waived the requirement by accepting rent from Southland for several months and concluded that Southland's liability to Marx was caused by its own failure to pay its rent on time and not by Hartzog's failure to obtain written consent. The trial court thus held that Hartzog was entitled to recover $3,355, the amount withheld by Southland. Southland relies on the statement in Marx's letter that Hartzog's failure to obtain consent was a reason for its declaring default in February 1972.
We agree with the trial court. A lessor, who, knowing of the assignment of a lease, accepts the assignee as substituted lessee by receiving rent from him without objection, is held to have consented to the assignment. City Garage Sales Co. v.Ballenger, 214 Ala. 516, 108 So. 257 (1926). *Page 131 
Thus, even though Marx cited Hartzog's failure to obtain its consent to the assignment as a reason for its notice of termination of the lease, Hartzog's failure to obtain Marx's consent was not a valid basis for forfeiting the lease and thus could not constitute a breach of Hartzog's contract with Southland.
Furthermore, Southland's argument is based on the theory that Marx breached the lease by declaring forfeiture, but, as the trial court found, Marx had good reason for declaring forfeiture, viz., Southland's chronic tardiness in paying its rent. Since Marx did not breach the lease, Hartzog could not be liable for causing Marx to breach the lease.
AFFIRMED.
JONES, EMBRY and BEATTY, JJ., and CATES, J., sitting by designation of the Chief Justice, concur.