This is an appeal involving a dispute over a lease agreement. Two basic questions are presented:
(1) Did the lessee give timely notice of its intention to renew?
(2) Was the lease void because it was for a term in excess of 20 years and was not recorded within one year after its execution, as required by law?
The facts encompass three legal instruments, the first of which was executed some twenty years ago. For the sake of clarity, we summarize the pertinent provisions of these legal instruments, and present them chronologically, along with such other occurrences as are relevant.[1]
 AUGUST 1, 1963 — THE LEASE AGREEMENT
Birmingham Trust National Bank as lessee entered into a lease agreement with Byrd Companies, Inc., Realtors.[2] The agreement set forth the term of the lease *Page 249 
as being 18 years, "the date of commencement to be evidenced, upon its ascertainment, by the execution by the parties of an agreement supplemental hereto setting forth such date." Additionally, the agreement provided an option to renew for "an additional term of eight (8) years by giving . . . Lessor . . . notice to that effect no less than six (6) months prior to the expiration of the lease."
 AUGUST 31, 1964 — THE LEASE AMENDMENT AGREEMENT
The Bank and Byrd, Inc., executed an amendment to the August 1, 1963, lease agreement. The amendment provided, inter alia, that the lease term of 18 years was to begin on September 1, 1964, and end on August 31, 1982.
 SEPTEMBER 1, 1964 — RECORDATION OF THE LEASE AGREEMENT
The August 1, 1963, agreement was recorded in the proper probate office, and the Bank took possession of the leased premises.
 SEPTEMBER 9, 1964 — RECORDATION OF THE LEASE AMENDMENT
The August 31, 1964, lease amendment was recorded.
 AUGUST 5, 1965 — THE MODIFICATION/RATIFICATION AGREEMENT
An instrument entitled "Modification and Ratification of Lease" was executed by the parties. This instrument stated in paragraph 1 that the lease agreement of August 1, 1963, and its amendment of August 31, 1964, "are now in full force and effect, and that same are hereby modified so as to provide that commencement date of the original term of the said lease and amendment is and was the 9th day of April, 1965." Paragraph 4 of the agreement said, "Except as herein provided, all other terms, provisions, covenants, stipulations, and conditions contained in said lease and amendment thereto, are hereby ratified and approved."
 AUGUST 2, 1982 — NOTICE OF RENEWAL
The Bank sent a letter to Byrd, stating that pursuant to the lease agreement of August 1, 1963, it was exercising its option to renew the lease and extend it for a term of eight years, to end on April 8, 1991.
The Bank promptly received a letter from Byrd, Inc., stating, "In the lease agreement dated August 31, 1964, the term of the lease is recited to be `for and during a term of eighteen years commencing on the first day of September, 1964, and ending on the thirty-first day of August.' We do not find that the term of the lease was changed by any other amendment or modification agreement. Accordingly, it is our position that [the Bank] has invalidated its option by not sending written notice on or before February 28, 1982. Unfortunately, this also means that your lease expires on August 31, 1982, and we ask that you vacate the premises on or before this date. However, we will be happy to discuss a new lease as you desire."
The Bank did not "vacate the premises." Instead, it brought suit on November 15, 1982, against Byrd, Inc. The Bank requested the Jefferson County Circuit Court to declare:
(1) That the initial term of the Lease Agreement between the parties was in full force and effect;
(2) That the Bank timely exercised the right to renew contained within the Lease Agreement; and,
(3) That the renewal term of the Lease Agreement would become effective, without further action by the Bank, as of April 9, 1983.
Byrd answered that the right to renew was not timely exercised and that the lease term had expired. Byrd also counterclaimed for damages for unlawful detention of the real estate and for its fair rental value during the period of unlawful detention. *Page 250 
The circuit court, sitting in equity, found that the lease term was for eighteen years, commencing April 9, 1965, and ending April 8, 1983; that the Bank timely exercised its right to renew; and that the lease is "presently in effect under a renewal term of eight years, commencing April 9, 1983, and expiring April 8, 1991." Having so found, the court denied Byrd's counterclaim for damages.
Byrd appeals to this Court.
Byrd argues that the Modification/Ratification Agreement of August 5, 1965, did not amend or modify the lease commencement date as set forth in the August 31, 1964, lease amendment. In essence, Byrd's position is that the lease term was for 18 years, beginning September 1, 1964, and ending August 31, 1982. If Byrd is correct, the Bank's notice of renewal dated August 2, 1982, was some five months too late to be effective. Furthermore, Byrd argues that even if the Modification/Ratification Agreement changed the commencement date of the 18-year term, and the Bank did effectively exercise its renewal option, the lease was for a term of more than 20 years and is void for any period in excess of twenty years because the Bank failed to timely record it within a year of its execution, as required by Code 1975, § 35-4-6. Byrd also argues that it is due damages, pursuant to Code 1975, §6-6-314, for the Bank's wrongful detention of the premises.
The Bank argues that the Modification/Ratification Agreement changed the commencement date of the 18-year lease from September 1, 1964, to April 9, 1965. Thus, it says, the ending date was April 8, 1983, and its renewal notice of August 2, 1982, effectively extended the lease through April 8, 1991. Furthermore, the Bank argues that the recordation of the original lease and its amendment on September 1, 1964, and September 9, 1964, respectively, satisfies the requirements of Code 1975, § 35-4-6.
 I
In order to resolve this dispute over the length of the Bank's lease term, it is necessary to determine what effect the Modification/Ratification Agreement had on the lease term provisions contained in the parties' two prior agreements — the Lease Agreement and its amendment. The Lease Agreement directs us to the amendment, and the amendment clearly sets forth "a term of eighteen years commencing on the first day of September, 1964, and ending on the 31st day of August, 1982." Almost a year after the amendment's execution, the Modification/Ratification Agreement was executed. It was in unequivocal terms: "[The lease and amendment] are hereby modified so as to provide that commencement date of the original term . . . is and was the 9th day of April, 1965." We can think of no clearer expression of an intent to change the beginning date of the 18-year term. In plain terms, this agreement, which is even entitled "Modification and Ratification of Lease," says that the term's beginning date is changed.
Yet, Byrd argues that the Modification/Ratification Agreement had no effect whatsoever on the length of the lease term as set forth in the lease amendment, contending that "[T]he Modification and Ratification instrument was essentially an assurance by both [the Bank] and Byrd to Connecticut General Life Insurance Company, [Byrd's] . . . mortgagee, that the tenant, [the Bank], had taken possession of the premises and to establish a date on which the first rental payment was due."
At trial, the lawyer who drafted the Modification/Ratification Agreement testified, "The only purpose of that document was to establish a date on which the first rental payment — establish a date when the term would begin insofar as rental payments are concerned." Apparently, the lawyer prepared the agreement, leaving blanks for the date, and sent it to the Bank with a cover letter stating, "Your attention is directed to Paragraph 1 on Page 2 of the Agreement where you are to insert the date on which the lease became effective." Concerning the language of the letter, the lawyer testified, "Now, that is poor language. *Page 251 
It should have said when the rental commences." But, it did not. Nor did the Agreement itself say "rental payment date," but "commencement date."
In view of the unequivocal language of the agreement, we must reject Byrd's argument. Regardless of the allure of Byrd's foregoing explanation and argument, before we could properly consider it, we would have to find that the agreement is ambiguous, because in the absence of an ambiguity, we may not interpret a lease, "but must take it as it is written." DarlingShop of Birmingham v. Nelson Realty Co., 255 Ala. 586, 591,52 So.2d 211, 215 (1951). In other words, unless we find an ambiguity in these three instruments,[3] there is nothing for us to construe. Lilley v. Gonzales, 417 So.2d 161, 163 (Ala. 1982). See 17A C.J.S. Contracts § 295 (g) (1963) ("So, it has been said to be a cardinal rule of construction that the rights and liabilities of the parties, in the absence of ambiguity, fraud, duress, or mutual mistake, are to be determined by the terms of the agreement, irrespective of the intent of the parties at the time the agreement was executed").
We find the documents to be unambiguous. They create a lease for an 18-year term beginning on April 9, 1965, and ending April 8, 1983. The fact that the Modification/Ratification Agreement did not also modify the termination date of August 31, 1982, as set forth in the lease amendment, creates no ambiguity. The plain meaning of the Modification/Ratification Agreement is that the commencement date was changed and the lease term was not. The Agreement modified the "commencementdate of the original term." If the commencement date was modified, and the original 18-year term was ratified, the termination date must necessarily be moved forward to correspond to the amended commencement date so as not to shorten the original 18-year term.
The present situation is analogous to that discussed by a leading authority on real property in a treatise on that subject:
 "Where a lease fixes a definite time for the commencement of the term and states the number of months or years it is to run and then gives a wrong date for its termination there is a clear mistake in calculation and the actual intention of the parties will prevail. There is no ambiguity or opportunity for applying rules by construction, but merely an error in computation." 3 J. Grimes, Thompson on Real Property, § 1091 at 309-10 (repl. ed. 1980).
Moreover, even if we were of the opinion that the lease was ambiguous, and thus open to construction, the outcome of this dispute would be the same. If it were ambiguous, we would have to construe it "most strongly against the party who drew it."Lilley v. Gonzales, supra. See also, Rivers v. Oakwood College,442 So.2d 74, 76 (Ala. 1983). In the instant case, the Modification/Ratification Agreement was drafted by Byrd's mortgagee, Connecticut General Life, but solely for Byrd's benefit. Furthermore, "[a]s a general rule, the language of a contract, in the case of ambiguity, should be interpreted in the sense that the promisor knew, or had reason to know, that the promisee understood it." 17A C.J.S., supra, at § 295 (i). We are of the opinion that the trial judge could have found that Byrd, regardless of Byrd's true intention, should have known that the Bank might interpret the Modification/Ratification Agreement's language, "commencement date of the original term," to mean exactly what it said, and could have found that Byrd's intention was to change the commencement date of the 18-year term.
We hold, therefore, that the trial court did not err in finding that the instant instruments created a lease term of 18 years, commencing on April 9, 1965, and terminating on April 8, 1983, and that the Bank *Page 252 
properly exercised its option of renewal for an additional eight years.
 II
We turn now to the issue of whether the lease is void for any period in excess of twenty years, under the provisions of Code 1975, § 35-4-6.
Because the Bank effectively exercised its renewal option, the original lease term of 18 years was extended for eight years. The full lease term, therefore, is 26 years. Byrd argues that a 26-year term violates Code 1975, § 35-4-6, because the Bank did not record the lease within a year after its execution.
Code 1975, § 35-4-6, reads as follows:
 "No leasehold estate can be created for a longer term than 99 years. Leases for more than 20 years shall be void for the excess over said period unless acknowledged or approved as required by law in conveyances of real estate and recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated."
It is undisputed that Byrd did not record the August 1, 1963, lease agreement until September 1, 1964. But, § 35-4-6 "applies only to tenancies for terms of years." Interurban Land Co. v.Crawford, 183 Fed. 630, 632 (N.D.Ala. 1910) (construing Code 1907, § 3418, the predecessor of present Code 1975, § 35-4-6). Thus, the determinative question on this issue becomes "What interest or estate did the August 1, 1963, lease agreement create?"
In Thompson on Real Property, we find the following:
 "A tenancy with an agreement for its termination on a date certain is a tenancy for a term not a tenancy at will. An `estate for years' is a lease limited for a definite time, greater or lesser than a year. . . . If the date of termination is not certain it is a tenancy at will. A tenancy for years must be certain as to commencement, duration and termination. But if it does end on a date certain it is a term tenancy not a tenancy at will." 3 J. Grimes, supra, at § 1017 (footnotes omitted).
And, Corpus Juris Secundum states:
 "In order to create an estate for years, the lease must be certain as to the beginning, duration, and termination of the term." 51C C.J.S. Landlord Tenant § 27 (1968) (footnotes omitted).
The Lease Agreement of August 1, 1963, specifies the 18-year term, but contains no definite commencement date: "Lessor does hereby demise and let unto Lessee the following described property . . . for use and occupancy by Lessee for the operation of a banking institution, and for no other or different use or purpose, for and during a term of 18 years commencing on the date Lessor executes its said lease agreement with Sears, Roebuck and Co. with respect to the property reflected by Exhibit `A' attached hereto and made a part hereof as if set out fully herein and ending 18 years thereafter, said date of commencement to be evidenced, upon its ascertainment, by the execution by the parties of an agreement supplemental hereto setting forth such date."
The failure to specify a definite commencement date, however, is not fatal to the creation of a term for years:
 "A valid term for years may be created to begin in futuro; and a lease, as to its commencement, may operate prospectively, restrospectively, or immediately, from its execution, according to the intention of the parties and the language employed by them, which, if unambiguous, is controlling."
51C C.J.S., supra, at § 28.
 "A leasehold estate, however, such as a term for years, may be created at common law to commence in futuro."
49 Am.Jur.2d Landlord and Tenant § 67 (1970). We addressed this issue in Industrial Machinery, Inc. v. Creative Displays, Inc.,344 So.2d 743 (Ala. 1977), and found that "the better rule is that a valid term for years may be created to begin in the future and that a lease may provide *Page 253 
that the term may commence on the happening of a stated event."Id. at 747.
The 1963 Agreement, therefore, does not fail as a term for years because it lacks a commencement date.
A lease for a term for years to commence in futuro, however, is often confused with a contract to execute a lease at a later date, i.e., an executory agreement to lease. The distinction is important in the calculation of damages after a breach has occurred. See R. Cunningham, W. Stoebuck D. Whitman, The Lawof Property § 6.13 at 271 (1984) ("If the agreement is a lease, damages are the unpaid rent, whereas damages are only the difference between the agreed rent and fair rental value if the agreement is a contract"). The distinction is also important to us here, because if the 1963 Agreement is a lease, § 35-4-6
applies. On the other hand, if the Agreement is "merely an executory agreement to lease (i.e., a contract), then § 35-4-6, which requires recordation of leases of more than twenty years, is inapplicable.
Whether an agreement is a lease or an agreement to lease depends on the intention of the parties "as manifested by the language of the instrument." 3 J. Grimes, supra, § 1062, at 230. The instant 1963 Agreement describes the property to be demised, and specifies the amount, timing, and frequency of the Bank's rental payments. The parties are referred to as "lessor" and "lessee," and the Agreement, itself, is exclusively referred to as a "lease." Language of present demise is used throughout the Agreement (e.g., "Lessor does hereby demise and let").
Additionally, there is no hint in the Agreement that the parties anticipated the subsequent execution of any other instrument except an agreement setting forth the date ofcommencement. And, as we have seen, a later agreement which supplies a commencement date is not inconsistent with a determination that the agreement is a lease for an estate for years to commence in futuro. Indeed, the execution of such an agreement is one method of creating such a leasehold estate.See 2 R. Powell, Powell on Real Property ¶ 223 (1983). We hold, therefore, that the 1963 Agreement was a lease which created an estate for years to commence in futuro.
Our analysis does not end here, however, for we have yet to determine when the Bank acquired its estate for a term for years. Several authorities have addressed this issue:
 "[When a leasehold estate for a term for years to begin in futuro is created] a present interest vests, called an `interesse termini,' although not an interest in possession, until the lessee enters into possession. The time between the making of the lease and its commencement in possession is no part of the term granted by it. The term is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself by virtue of the lease from the time it vests in possession."
49 Am.Jur.2d, supra, at § 67 (footnotes omitted).
 "It has been said that until the lessee enters he has no estate but only an interesse termini, a right to enter. Interesse termini would thus apply in two situations — where the term stated in the lease has commenced but the lessee has not taken possession, and where there is a lease to take effect in the future. . . . The lessee under a validly executed lease to commence in the future immediately becomes the owner of an interest which will become a possessory estate when the term commences."
1 H. Lesar, American Law of Property, § 3.22 (A. Casner ed. 1952) (footnotes omitted).
 "A transaction looking to the creation of an estate for years can pass through a series of steps. . . . Fourth, A and B may reach full agreement constituting a lease for an estate for years to begin at a future date, which has passed without entry having been made. The legal effects of having reached any one of these *Page 254 
four situations are well established and can be simply stated. . . . In the fourth situation the lessee has what the older authorities spoke of as an interesse termini; that is, he is in the position where only entry is necessary to turn him into a full-fledged tenant for years."
2 R. Powell, supra, at ¶ 223.
 "So too a lease may provide that the term is to commence on the happening of a stated event, with the result that after the occurrence of the event all uncertainty is removed and the lease is valid and binding; but if the event on which the commencement of the term is clearly conditioned does not occur no tenancy commences."
51C C.J.S., supra, at § 28.
 "When a stipulated event must occur before an otherwise validly created landlord-tenant relationship is to commence, the relationship is not established until such event occurs."
Restatement (Second) of Property § 1.8 comment a (1977).
 "There is no disagreement with the position taken in this section that the commencement of a landlord-tenant relationship may depend upon the occurrence of an event. The relationship, however, cannot begin until the tenant has the right to possession. Prior to that time, the arrangement between the parties is not one of landlord and tenant though the agreement they have entered into may impose current obligations on one or the other."
Restatement (Second) of Property § 1.8 reporter's note at 62 (1977).
Various courts have also had opportunities to rule on the issue of when a lessee in a lease for a term for years to beginin futuro receives the estate:
 "The obvious intent of the contracting parties, as disclosed by the instruments themselves, was to make a lease of the ground and building for ten years. The indeterminate interval between the date of execution of the lease and the beginning of the ten year term was no part of the effective period of the intended landlord and tenant relationship. Under the common law that relationship would not begin until the tenant entered into possession and the landlord became entitled to rent. . . . This is not to say that the lease had no binding effect during that interval; the lessors were bound thereby to erect the building and to give possession to DuPont upon completion, when DuPont would become legally entitled to possession and liable for the rent. DuPont acquired an interest, and had it during the said interval, not as a tenant but as one legally bound and entitled to become a tenant at a somewhat uncertain date in the future. This interest or right is sometimes called an `interesse termini.'" E.I. DuPont de Nemours and Co. v. Zale Corporation, 462 S.W.2d 355, 358 (Tex.Civ.App. 1970) (citations omitted).
See also Schwartzman v. Wilmington Stores Co., 32 Del. 362,123 A. 343 (1924); De Pauw University v. United Electric CoalCompanies, 299 Ill. App. 339, 20 N.E.2d 146 (1939); Reichman v.Drake, 89 Ohio App. 222, 100 N.E.2d 533 (1951); Bunch v.Elizabeth City Lumber Co., 134 N.C. 116, 46 S.E. 24 (1903).
The foregoing authority leads us to the conclusion in the instant case that the Bank did not receive an estate for a term of years until Byrd executed a lease agreement with Sears, Roebuck, and Company and thereafter executed an agreement with the Bank which set a commencement date for the 18-year lease term called for in the August 1, 1963, Agreement.[4] The commencement *Page 255 
date supplied by this later (August 31, 1964) agreement, entitled "Lease Amendment Agreement" was September 1, 1964. It was then, and only then, that the Bank and Byrd's landlord/tenant relationship began, because, as we have seen, prior to that date, the Bank had an interesse termini, but no estate for a term for years.
Code 1975, § 35-4-6, speaks only of "leases" and "leasehold estates," and applies only to tenancies for terms for years.Interurban Land Co., supra. It is silent with respect to aninteresse termini — that interest which arises prior to the leasehold interest of an estate for a term of years to commencein futuro. We hold, therefore, that § 35-4-6 did not require the Bank to record the August 1, 1963, Agreement during that period when the bank had an interesse termini but no estate for a term for years.
On September 1, 1964, the commencement date of the lease term, the Bank's interesse termini ripened into a leasehold estate of a term for years, and § 35-4-6 required recording within a year for the lease term to be valid for any period in excess of 20 years. The Bank's recordation of the Lease Agreement on September 1, 1964, and the Lease Amendment on September 9, 1964, within eight days after its leasehold relationship began, complied with § 35-4-6. Therefore, the Bank has a valid lease term of 26 years (the initial 18-year term plus the 8-year renewal term), which expires April 8, 1991 (because the Modification/Ratification Agreement changed the commencement date from September 1, 1964 to April 9, 1965).
 III
Because we find that the Bank's original 18-year lease term began April 9, 1965, and was extended through April 8, 1991, by the Bank's timely exercise of its renewal option, the trial court properly denied Byrd's claim for damages for wrongful detention.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and HOUSTON, JJ., concur.
[1] A diagram of these events is included as an appendix.
[2] Although this lease and the subsequent agreement named a lessor other than Byrd Companies, Inc., Realtors, and the original complaint named three defendants, none of them being Byrd Companies, Inc., Realtors, the Bank and Byrd have stipulated that as a result of merger, consolidation, dissolution, and change of name, Byrd Companies, Inc., Realtors, is the successor in interest of each named defendant and the present owner of the real estate in question. Therefore, in the interest of simplicity, we refer to the lessor in each instrument as being Byrd Companies, Inc., Realtors, and we shall hereinafter call that party "Byrd" or "Byrd, Inc."
[3] "If instruments taken together constitute but one lease, they must be construed as a whole." 3 J. Grimes, Thompson on RealProperty, § 1052 (repl. ed. 1980). See also, Task Consultants,Inc. v. Finerty, 339 So.2d 87, 89 (Ala. 1976).
[4] Apparently, American authorities and jurisdictions are split on the issue of whether an estate for years to commence infuturo vests: (1) when the commencement date is supplied (either by the occurrence of a previously stated event or by the arrival of the date supplied by the execution of a later agreement) and the lessee has a right of entry, or (2) when the lessee actually enters the premises. Compare Restatement (Second) of Property, supra, § 1.8 reporter's note at 62, with
2 R. Powell, supra, ¶ 223. In other words, some jurisdictions require actual entry before a landlord/tenant relationship begins and a leasehold estate is created. The issue only arises, of course, when there is, for whatever reason, an interval of time between the vesting of the lessee's right of entry and the lessee's actual entry.
In the instant situation, the Bank's right of entry vested on September 1, 1964, and the Bank took possession on that same date. Thus, we are not faced with the issue of whether actual entry is necessary to transform an interesse termini into a leasehold estate for years, and we decline to decide the issue at this time. We note, however, that in Tully v. Dunn, 42 Ala. 262,264 (1868), we held that "[t]he appellant having committed a breach of contract, by failure to enter upon its performance[i.e., failure to take possession], the appellee was not bound to suffer the premises to remain vacant during the term. In such case, the landlord may let the premises lie idle andrecover rent for the whole term, or he may put an end to the contract of lease by entry." (Emphasis added.) *Page 256 
[EDITORS' NOTE: APPENDIX IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 257