SHORES, Justice.
Rogina Investment Corporation filed this declaratory judgment action seeking a determination of the effect of one paragraph of a ground lease amendment. Beatrice Tedescki, as lessor under the ground lease, was the defendant in the action.
Prior to the hearing date, Tedescki’s attorneys filed a motion to withdraw, based on the fact that she had failed to pay attorneys’ fees and had notified counsel for plaintiff that her nephew would negotiate for her. The court granted the motion to withdraw after a hearing, and the action was tried to the court without a jury. Ted-escki appeared on her own behalf. The trial court entered its final judgment, and, after it overruled her motion for new trial, Tedescki appealed. We affirm, and we adopt the judgment of the trial court as this Court’s opinion:
“FINAL JUDGMENT
“This cause came on to be heard upon testimony taken and other evidence presented at an oral hearing, without jury. The trial of the case had been continued once previously and the Court refused an additional continuance.
“Based upon the evidence presented to it, the Court makes the following findings of fact:
“1. On January 24, 1978, Defendant, Beatrice Tedescki (‘Tedescki’), executed a ground lease (the ‘Ground Lease’) whereby she leased to Merritt Rogers, Bill Ingram, Ben Power and Charles Yar-brough (the ‘original Lessees’) certain real property situated in Jefferson County, Alabama (the ‘Leased Premises’). The Ground Lease contained the following covenant:
“ ‘Lessees covenant and guarantee that for the first twenty-five (25) years of this lease an Omelet Shoppe restaurant shall be operated on the premises and the failure of Lessees to so contract and operate an Omelet Shoppe restaurant on the leased premises shall be a material breach of this agreement and this lease shall be null and void at the option of the lessor.’
“2. The Original Lessees subleased a portion of the Leased Premises to Omelet Shoppe, Inc., soon after execution of this Ground Lease, and an Omelet Shoppe restaurant was constructed thereon. That restaurant continues to this date to be operated there.
“3. On December 1, 1978, Tedescki and the Original Lessees, individually and as partners doing business as Golden Corners Investments, and Exxon Corporation entered into an amendment to lease agreement and consent to sublease whereby Exxon subleased a portion of the Leased Premises. On the same date, Tedescki and the Original Lessees executed an amendment to the Ground Lease which deleted the provision in paragraph 1 above and substituted the following in lieu thereof:
“ ‘Lessees covenant and guarantee that for the first 25 years of this lease an Omelet Shoppe restaurant shall be operated on the premises and the failure of Lessees to so conduct and operate an Omelet Shoppe restaurant on the leased premises shall be a material breach of this agreement and this lease shall be mill and void at the option of Lessor [Tedescki]; provided, however, in no event shall the termination of this lease for any reason terminate any sublease or assignment which Lessees herein have entered into with any third party. In the event of Lessees’ default of this provision or any provision herein, Sublessee shall be entitled to continue in possession and to make all rental payments direct to Lessor in Lessees’ stead.’ (Emphasis supplied).’
“4. In August, 1978, the Original Lessees had obtained a loan from National Bank of Commerce (‘NBC’) and as security therefor had assigned to NBC their right, title and interest in and to the Ground Lease by lease assignment dated August 9, 1978. Additionally, the Origi *456 nal Lessees had executed a leasehold mortgage in favor of NBC which assigned and conveyed to NBC the Ground Lease and leasehold estate created thereby-
“5. On December 11, 1979, NBC assigned to Rogina its loan to the Original Lessees, together with all of NBC’s right, title and interest in the Ground Lease, the leasehold mortgage, the assignment of lease and other collateral security by means of an assignment....
“6. Thereafter, when the Original Lessees and Golden Corners Investments defaulted on the NBC loan, Rogina, as NBC’s assignee, commenced foreclosure of the leasehold mortgage and acquired all of the leasehold interest under the Ground Lease and leasehold estate created thereby by successful bid at the foreclosure proceedings. Thus, Rogina succeeded to the interests of the Original Lessees by assignment from NBC and subsequent foreclosure.
“7. Rogina is not in default under the terms of the Ground Lease in any respect, but has filed this declaratory judgment action to assure that any future discontinuance of operations of the Omelet Shoppe restaurant on the subleased property by Sublessee Omelet Shoppe, Inc., would not be construed as a default on Rogina’s part. Additionally, it seeks an order requiring Tedescki to furnish it, from time to time, with estoppel certificates identifying the Ground Lease, describing its terms, and acknowledging that there are no defaults of which Ted-escki has notice.
“The sole matter in dispute in this action is whether a cessation by Omelet Shoppe, Inc., to operate a restaurant on the Leased Premises would constitute a default by Rogina as assignee under the Ground Lease. Resolution of this issue depends upon this Court’s construction of that paragraph of the Amendment to Ground Lease quoted above.
“In construction of a written contract, the parties’ intentions must be derived from the language of the contract itself. Southern Housing Partnership v. Stowers Management Co., 494 So.2d 44 (Ala. 1986). Here, the language of paragraph 3 of the Amendment to Ground Lease is clear and unambiguous: default on the part of the Original Lessees does not terminate the Ground Lease as to a third party assignee. Rogina was not a party to the Ground Lease or to the Amendment to Ground Lease. It acquired its interest as a third party by assignment from NBC. Thus, the following provision of the amendment to Ground Lease applies to it, expressly and unambiguously:
“ ‘[I]n no event shall the termination of this lease for any reason terminate any sublease or assignment which Lessees herein have entered into with any third party.’ (emphasis supplied).
“While the failure of Sublessee Omelet Shoppe, Inc. to operate a restaurant upon the leased premises might constitute a default by the Original Lessee under the Ground Lease, the Amendment to Ground Lease makes it quite clear that such a' default would not operate to terminate the rights of Rogina.
“The Ground Lease and Amendment to Ground Lease contain no provisions requiring Tedescki to furnish Rogina estop-pel certificates and, therefore, the Court finds there is no basis to order Tedescki to furnish such certificates.
“It is, therefore, ORDERED, ADJUDGED and DECREED by the Court as follows:
“ONE: A failure by Omelet Shoppe, Inc., or by the Original Lessees to operate an Omelet Shoppe restaurant upon the leased premises would not constitute a default by, or effect a termination of the rights of, Rogina.
“TWO: The request of the Plaintiff for the Court to require Beatrice Tedescki to provide it with estoppel certificates is denied.
“THREE: Costs of this action are taxed to the Defendant, Beatrice Ted-escki.
“DONE and ORDERED this 1st day of August, 1988.
“[signed] Jack D. Carl
“CIRCUIT JUDGE”
*457 On appeal, Mrs. Tedescki argues that the court erred in its interpretation of the lease. We disagree. The language of paragraph 3 of the amendment is without ambiguity. The trial court had no alternative to enforcing it.
Without identifying in what way it was done, she also argues that the trial court violated her constitutional rights in conducting the trial. We are unpersuaded. Mrs. Tedescki had notice that the case was set for trial. The trial court was fully authorized to proceed to hear the case.
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.