991 So.2d 681 (2008)
Ronald GILBERT
v.
ROGINA INVESTMENT CORPORATION.
1050161.
Supreme Court of Alabama.
April 4, 2008.
*682 Timothy L. Arnold, Bessemer, for appellant.
Henry I. Frohsin and Harriet Thomas Ivy of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Birmingham, for appellee.
COBB, Chief Justice.
Ronald Gilbert, the defendant in an action involving a dispute over a ground lease, appeals from a judgment in favor of the plaintiff, Rogina Investment Corporation ("Rogina"). We affirm.

*683 I. Background

Alabama appellate courts have addressed questions regarding the contract that is the subject of this action on two previous occasions. See Tedescki v. Rogina Inv. Corp., 547 So.2d 454 (Ala.1989), and Rogina Inv. Corp. v. Gilbert, 816 So. 117 (Ala.Civ.App.2000) (table). Beatrice Tedescki executed a ground lease on January 24, 1978, leasing to Merritt Rogers, Bill Ingram, Ben Power, and Charles Yarbrough certain real property located on the southeast corner of the intersection of U.S. Highway 31 and Lorna Road in Hoover ("the lease agreement"). The lease was for a term of 25 years, commencing March 1, 1978, but the lessees had the option of extending the lease for eight successive five-year periods. The lease agreement was recorded in the Jefferson County Probate Office on August 9, 1978, as required by § 35-4-6, Ala.Code 1975.[1] An amendment to the lease agreement was executed on December 1, 1978, and recorded in the Jefferson County Probate Office on July 18, 1985.
In August 1978, Rogers, Ingram, Power, and Yarbrough executed a mortgage in favor of the National Bank of Commerce ("NBC"), assigning and conveying the lease agreement and the leasehold estate created thereby to NBC. NBC in turn assigned its rights, title, and interest in the mortgage and the lease to Rogina on December 11, 1979. Rogers, Ingram, Power, and Yarbrough defaulted on the indebtedness secured by the mortgage; thus, Rogina foreclosed on the leasehold interest. A foreclosure sale was held, and Rogina was the highest bidder for the leasehold interest of Rogers, Ingram, Power, and Yarbrough. The ground lease was then conveyed to Rogina. Tedescki died in 1989 and bequeathed the property which is the subject of the lease agreement to her nephew, Gilbert.
On September 16, 1991, Rogina exercised its first option to extend the term of the ground lease from March 1, 2003, through February 29, 2008. On March 3, 2000, Rogina exercised the remainder of its options to extend the term of the ground lease through February 28, 2043.
The lease agreement contains the following pertinent provisions:
"Unless prohibited by the terms of any mortgage or deed of trust, the Lessees may, during the first twenty (20) years of the primary term of this lease make such alterations, structural or otherwise, to the leased property as the Lessees deem desirable in the conduct of [their] business, including but not limited to, the demolition of any building presently existing on said property or any part thereof without the written consent of Lessor. Lessees, without the written consent of the Lessors or Lessors successors in interest, shall, during the first twenty (20) years of the primary term of this lease, have the right to tear down or materially demolish any improvements made by the Lessees on the leased property, or make any material change or alteration in such improvements.
".....
"During the last five (5) years of the primary term hereof and any extension hereof, any demolition or structural alteration to any improvement shall not be *684 done without the written consent of Lessor, or Lessors successors in interest, which said consent shall not be unreasonably withheld."
The recitation of the amendment to the lease agreement stated that the January 1978 lease was the "base lease" and that the parties had agreed to modify the "base lease." Among the modifications to the base lease was the following:
"Lessees covenant and guarantee that for the first twenty-five (25) years of this lease an Omelet Shoppe restaurant shall be operated on the premises and the failure of Lessees to so construct and operate an Omelet Shoppe restaurant on the leased premises shall be a material breach of this agreement and this lease shall be null and void at the option of the Lessor; provided, however in no event shall the termination of this lease for any reason terminate any sub-lease or assignment which Lessees herein have entered into with any third party. In the event of Lessees' default of this provision, or any provision herein, sub-lessees shall be entitled to continue in possession and to make all rental payments direct to Lessor in Lessees stead."
In 2001, the Omelet Shoppe ceased operation at its location on the leased property. The structure that housed the Omelet Shoppe was left in a state of disrepair, including a leaking roof, rotten eaves, water damage to the interior, and exposed electrical wires. Rogina hired a contractor to stabilize the structure. Rogina wrote Gilbert informing him of the work being done on the Omelet Shoppe structure. Gilbert responded, stating that Rogina did not have his permission to make the repairs to the Omelet Shoppe structure and that by making the repairs Rogina was in violation of the lease agreement. Gilbert likewise claimed that the lease agreement was void because the amendment to the lease agreement executed on December 1, 1978, was not recorded with the Jefferson County Probate Office until July 18, 1985.
On March 5, 2003, Rogina and O'Henry's Coffee, Inc., entered into a letter of intent. O'Henry's indicated that it would sublease the Omelet Shoppe building for a base term of five years at a rate of $5,000 per month and make the alterations necessary to open a coffee shop in the structure. On April 23, 2003, Rogina's attorney wrote Gilbert's attorney seeking Gilbert's permission for O'Henry's to make the structural alterations. In a September 5, 2003, letter, Gilbert's attorney stated that "no consent has been given to allow the requested modifications to the Omelet Shoppe property." On November 10, 2003, Rogina's attorney again wrote Gilbert's attorney seeking Gilbert's written consent to allow O'Henry to make structural alterations to the Omelet Shoppe building. Gilbert replied on November 21, 2003, that he "deem[ed] the written lease that was executed in 1978 to have expired after twenty (20) years" and that "any subsequent occupancy of the subject property by Rogina has been on an unwritten lease basis." Gilbert stated, however, that he was willing to negotiate a new contract with Rogina. Gilbert further stated that even if the 1978 lease agreement was still in effect, he had insufficient information on which to make an informed decision about the structural changes O'Henry's wanted to make to the Omelet Shoppe building. Rogina, however, had provided Gilbert's attorney in April 2003 with a conceptual rendering of the proposed new facade for the Omelet Shoppe building, a proposed floor plan, a memorandum from O'Henry's explaining the work to the exterior of the building that would need to be performed, and a copy of the letter of intent between Rogina and O'Henry's. Rogina's attorney wrote Gilbert's attorney on January 9, *685 2004, reminding him of the information provided in April 2003 as well as providing a letter from Randy Adamy, president of O'Henry's, regarding anticipated traffic volume at the proposed coffee shop. Gilbert never asked for any other information from Rogina regarding O'Henry's, nor did he consent to the modifications O'Henry's proposed. According to Tracy Messina, Rogina's president, Gilbert was unwilling to consent to the structural changes O'Henry's wanted unless Rogina made monetary concessions, including an escalation in rent and an up-front lump-sum payment of $50,000, neither of which were required under the lease agreement.
On February 9, 2004, Rogina received a letter written on behalf of O'Henry's and stating that O'Henry's had found another suitable location for its new store and that if Rogina was unable to resolve its issues with Gilbert within 30 days O'Henry's would move its project to that location. Because Rogina and Gilbert were unable to resolve their differences, O'Henry's selected the other location for its new store.
On July 29, 2004, Rogina sued Gilbert, alleging breach of contract and tortious interference with a business relationship; Rogina also sought a judgment declaring that under the lease agreement Rogina should not be required to seek Gilbert's approval for structural alterations to the Omelet Shoppe building and that the lease agreement is valid and effective through February 28, 2043. Gilbert moved the trial court for a partial summary judgment on the declaratory-judgment aspect of Rogina's complaint, stating that the lease agreement was void under § 35-4-6, Ala. Code 1975, because the amendment to the lease agreement was not recorded with the judge of probate's office within one year of its execution. The trial court denied Gilbert's summary-judgment motion, holding that
"the original lease was for a period of over twenty years and was duly recorded in compliance with Ala.Code [1975,] § 35-4-6. Furthermore, the amendment to this lease did not serve to extinguish the original lease that it modifies. Therefore, the original lease as modified by and including the amendment thereto is valid and enforceable. Defendant's Motion for Summary Judgment is hereby OVERRULED. By so holding, the purpose of Ala.Code [1975,] § 35-4-6 is not frustrated. This Court has fully considered the other, subsequent, arguments made by the parties, but because of this ruling regarding Ala.Code [1975,] § 35-4-6 the Court pretermits any discussion of those arguments at this time."
(Capitalization in original.) Gilbert filed a motion to alter, amend, or vacate the trial court's order denying his summary-judgment motion, which the trial court denied. Rogina, in turn, moved the trial court for a partial summary judgment, asking the trial court to declare that the language of the lease agreement did not obligate Rogina to obtain Gilbert's consent to demolish or to make structural alterations to the buildings on the leased premises until five years before the extension options of the lease agreement were to expire. The trial court granted Rogina's motion for a partial summary judgment, declaring that Rogina did not have to seek Gilbert's consent to demolish or to make structural alterations to the buildings on the premises until March 1, 2038, five years before the lease agreement was to expire.
After conducting a bench trial on Rogina's claims of breach of contract and tortious interference with a business relationship, the trial court entered a judgment in favor of Rogina on both claims and awarded Rogina actual damages of $130,500.00, prejudgment interest of $8,236.66, and attorney *686 fees of $40,716.50. The trial court's final judgment also provided:
"Further, in the event an appeal is filed and the judgments of the Court are superseded and the judgments of the Court are upheld on appeal, further and additional compensatory damages WILL BE DEEMED ENTERED, without further action or order from this Court, in favor of [Rogina] against [Gilbert], in the amount of Four Thousand, Five Hundred and no/100 Dollars ($4,500.00) per month for each month following August[] 2005 through the conclusion of said appeal but no later than April 1, 2008."
(Capitalization in original.) Gilbert filed a motion asking the trial court to alter, amend, or vacate its order pertaining to the accrual of damages while on appeal, which the trial court denied. Gilbert appeals.

II. Standard of Review
The evidence in this case was presented to the trial judge in a bench trial at which evidence was presented ore tenus; thus the ore tenus standard of review is applicable. As this Court has previously noted:
"`"When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error."' Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)); see also First Nat'l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987). As this Court has stated,
"`"The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
"`"[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence."'
"Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, `that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.' Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994)."
Robinson v. Evans, 959 So.2d 634, 637 (Ala.2006).

III. Analysis
On appeal, Gilbert raises five issues: (1) whether the failure by Rogina and its predecessor in interest to record the amendment to the lease agreement in the office of the probate judge within one year of its execution voided the lease agreement after 20 years; (2) whether the trial court erred to reversal by failing to disqualify the law firm representing Rogina because the possibility existed for an attorney in that firm to be a witness at trial; (3) whether Gilbert *687 was in breach of the lease agreement; (4) whether the trial court committed reversible error by awarding the accrual of monthly attorney fees while this action is pending on appeal; and (5) whether the trial court's verdict was against the great weight of the evidence.

A. Filing Requirement of § 35-4-6, Ala.Code 1975
Section 35-4-6, Ala.Code 1975, provides:
"No leasehold estate can be created for a longer term than 99 years. Leases for more than 20 years shall be void for the excess over said period unless the lease or a memorandum thereof is acknowledged or approved as required by law in conveyances of real estate and recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated."
Gilbert argues that, under the doctrine of merger,[2] the amended lease agreement is "the one and only lease" and thus is void because the amendment was not recorded in the Jefferson County Probate Office until six and one-half years after it was executed. In support of his argument, Gilbert cites Ex parte Achenbach, 783 So.2d 4 (Ala.2000).
In Achenbach, the parties were the successor lessors and successor lessee to a ground lease of certain property in Madison County. The original term of the ground lease was for 24 years and 9 months, and the ground lease included irrevocable renewal rights for successive 5-year periods, up to an aggregate of 99 years. It was undisputed that the lease was never recorded in the Madison County Probate Office. This Court, in reversing the judgment of the Court of Civil Appeals, held that according to the plain meaning of § 35-4-6, Ala.Code 1975, "a lease that is made for more than 20 years and that is not properly recorded, is void for any portion of that lease period that exceeds 20 years," 783 So.2d at 7, and that "a party cannot be estopped from asserting that a lease is void under [§ 35-4-6]." 783 So.2d at 8.
Rogina, however, argues that the original lease agreement and the amendment to the lease agreement must be construed as a whole as one lease and that novation of the lease agreement did not occur upon the execution of the amendment. In support of its argument, Rogina cites Byrd Cos. v. Birmingham Trust National Bank, 482 So.2d 247 (Ala.1985). In Byrd, the parties entered into a lease agreement on August 1, 1963; the term of the lease was 18 years with an option to renew for an additional 8 years but only if the lessee gave the lessor notice of its desire to renew the lease at least 6 months before the expiration date of the lease. The lease agreement stated that "`the date of commencement to be evidenced, upon its ascertainment, by the execution by the parties of an agreement supplemental hereto setting forth such date.'" 482 So.2d at 249. On August 31, 1964, the parties executed an amendment to the lease agreement that provided that the lease term would begin on September 1, 1964, and end on August 31, 1982. The lease agreement was recorded in the probate office on September 1, 1964, and the amendment was recorded on September 9, 1964. On August 5, 1965, the parties executed an *688 instrument entitled "Modification and Ratification of Lease," which stated that the August 1, 1963, lease agreement was currently in full force and effect and that the lease agreement was modified so as to provide that the commencement date of the original term of the lease and amendment was April 9, 1965. On August 2, 1982, the lessee sent the lessor a letter stating that it was exercising its option to renew the lease and extend it for eight years; the lessor, however, claimed that the term of the lease was never changed from the August 31, 1964, amendment to the lease agreement.
This Court held that all three documents the lease agreement, the amended lease agreement, and the modification and ratification of the leaseconstituted the lease, and, taken as a whole, there was no ambiguity and nothing for this Court to construe. Thus, the Court concluded, the term of the lease was for 18 years from April 9, 1965. The lessee, therefore, had given notice of its intent to exercise its option to renew at least six months before the expiration of the initial lease term.
The lessor also argued that the lessee failed to record the lease within one year as prescribed in § 35-4-6 because the lease agreement was recorded 13 months after it was executed. This Court, however, disagreed, holding that the lessee's interesse termini ripened into a leasehold estate of a term for years on September 1, 1964, when the lease commenced. Thus, the lease was recorded only eight days after the leasehold relationship began and well within the statutory time frame for recording the lease.
Rogina is correct that the amendment to the lease agreement relates back to the lease agreement executed on January 24, 1978. The amendment specifically refers to the January 1978 lease agreement as the "base lease" and states that "the parties hereto have agreed to modify the base lease in connection with the rent to be paid thereunder in Paragraph 5 and the termination provisions in Paragraph 5(f), all as hereinafter set forth." As this Court noted in Byrd: "`If instruments taken together constitute but one lease, they must be construed as a whole.'" 482 So.2d at 251 n. 3 (quoting 3 J. Grimes, Thompson on Real Property § 1052 (repl. ed.1980)). The lease agreement and the amendment thereto constitute only one lease; thus they must be construed as such.
Regarding statutory interpretation, it is well settled that "[w]hen interpreting a statute, this Court will first look to the plain meaning of the words as written by the Legislature. If the plain meaning of the language is unambiguous, then there is no room for judicial construction." Ex parte Achenbach, 783 So.2d at 7 (citations omitted). Rogina argues that § 35-4-6 is unambiguous in requiring the recording of only a "lease or a memorandum thereof"; therefore, it asserts, this Court cannot construe the statute to require the recording of an amendment to a lease. We agree. Further, interpreting § 35-4-6 to require the recording of amendments to leases would run afoul of the law in Alabama that an oral contract or an oral amendment to a contract relating to real property can be enforced under the part-performance exception to the Statute of Frauds or in instances of fraud, see Darby v. Johnson, 477 So.2d 322 (Ala.1985), and that a lease may be modified by oral agreement. See Southland of Alabama, Inc. v. Julius E. Marx, Inc., 341 So.2d 127 (Ala.1976). That being said, if a lease for a term of less than 20 years is amended so as to give the lessee an absolute and unconditional right to hold over for more than 20 years, then the lease and amendment or a memorandum thereof must be recorded with the *689 probate judge. See Tennessee Coal, I. & R.R. v. Pratt Consol. Coal Co., 156 Ala. 446, 47 So. 337 (1908); but cf. Harco Drug Co. v. Notsla, Inc., 382 So.2d 1, 3 (Ala. 1980).
Because Rogina met the requirements of § 35-4-6 by filing the lease with the Jefferson County Probate Office within one year of its execution, the lease is valid for its entire term, including the eight optional extensions of five years each. Because we conclude that Rogina did not violate the requirements of § 35-4-6, we pretermit consideration of Rogina's arguments regarding judicial estoppel and res judicata.

B. Trial Court's Refusal to Disqualify Rogina's Counsel and Their Law Firm
Gilbert argues that the trial court committed reversible error by denying Gilbert's motion to disqualify Rogina's attorney, Chervis Isom, as well as Isom's firm, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., from representing Rogina because of statements made by Isom in a letter and because of the possibility that he might be called as a witness at trial. In his brief, Gilbert states: "It is apparent from the above two quotes that the letter of Mr. Isom contains material which is adverse to his client's interest." (Gilbert's brief, p. 17.) Although it is not exactly clear to which passages Gilbert is referring, it appears to be the following two quotes found in a section of his brief addressing another argument:
"The ground lease does not require Mr. Gilbert to provide a non-disturbance agreement to Rogina's subtenants. As a practical matter, this transaction cannot go forward unless O'Henry's can obtain a non-disturbance agreement from Mr. Gilbert.
"....
"Hence the net return to Rogina will be $1500.00 per month."
Besides stating that Isom made statements adverse to his client's interests, Gilbert in his brief quotes Rule 3.7, Ala. R. Prof. Cond., "Lawyer as Witness," and cites Harkins & Co. v. Lewis, 535 So.2d 104 (Ala.1988), which construes DR 5-102, Alabama Code of Professional Responsibility,[3] and LeaseAmerica Corp. v. Stewart, 19 Kan.App.2d 740, 876 P.2d 184 (1994), which expounds upon Kansas's versions of Rule 3.7 and DR 5-102. Gilbert's claim regarding Isom, however, is not cognizable because we are unable to discern how Isom's words are "adverse" to his client.
In his motion before the trial court seeking to disqualify Isom, Gilbert appears to argue that the language he quoted Isom's letter is contradictory to Rogina's claim in its complaint that Gilbert breached the lease agreement with Rogina by unreasonably withholding consent to the proposed modifications to the subject property. However, as Rogina noted both in its response to Gilbert's motion and in its brief before this Court, it never contended before the trial court that Gilbert breached the lease agreement by refusing to provide a nondisturbance agreement. As Rogina notes, evidence in the record indicates that O'Henry's was willing to continue with the transaction without a nondisturbance agreement. Instead, Rogina argued that Gilbert breached the lease agreement by unreasonably withholding consent for O'Henry's to make the desired alterations to the structure that formerly housed the Omelet Shoppe.
*690 In reviewing the ruling on Gilbert's motion to disqualify Isom, we are unable to find any argument as to how Isom's reference to a monthly net return of $1,500 was adverse to his client's interests. Considering the foregoing, we conclude that the trial court properly denied Gilbert's motion to disqualify Isom.[4]

C. Gilbert's Remaining Arguments
As to Gilbert's remaining arguments, he fails to cite a single authority in support of those arguments. Further, he argues for the first time in his reply brief that this Court should overrule its holding in Tedescki v. Rogina Investment Corp., supra, and that Rogina had a duty to mitigate its damages. This Court will not consider those arguments.
"`The law of Alabama provides that where no legal authority is cited or argued, the effect is the same as if no argument had been made.' Bennett v. Bennett, 506 So.2d 1021, 1023 (Ala.Civ. App.1987) (emphasis added). `[A]n argument may not be raised, nor may an argument be supported by citations to authority, for the first time in an appellant's reply brief.' Improved Benevolent & Protective Order of Elks v. Moss, 855 So.2d 1107, 1111 (Ala.Civ.App.2003), abrogated on other grounds, Ex parte Full Circle Distribution, L.L.C., 883 So.2d 638 (Ala.2003). Where an appellant first cites authority for an argument in his reply brief, it is as if the argument was first raised in that reply brief, and it will not be considered."
Steele v. Rosenfeld, LLC, 936 So.2d 488, 493 (Ala.2005).

IV. Conclusion
The trial court correctly applied the law in holding that lease was not void by operation of law after 20 years and it did not err in denying Gilbert's motion to disqualify Rogina's attorney. We therefore affirm the judgment.
AFFIRMED.
SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS and MURDOCK, JJ., concur in the result.
MURDOCK, Justice (concurring in the result).
I disagree with the trial court's judgment in this case in the following respects:
1. A provision of the lease agreement states that demolition or structural alterations require the written consent of the lessor "[d]uring the last five (5) years of the primary term hereof and any extension hereof." (Emphasis added.) As I read it, the plain meaning of this language is that the lessor's consent is required both during the last 5 years of the initial, 25-year term of the lease agreement and during any and all extensions of that termnot just during the last 5 years of a period consisting of multiple extensions.[5] Moreover, the *691 quoted passage from the lease agreement must be read in pari materia with the earlier provision of the lease agreement stating that "Lessees, without the written consent of the Lessors ..., shall, during the first twenty (20) years of the primary term of this lease, have the right to tear down or materially demolish any improvements made by the Lessees on the leased property, or make any ... alterations in such improvements." (Emphasis added.)
2. If, however, as the trial court held, the lease agreement did not require the consent of the lessor during the period in question, how could the lessor be contractually liable for failing to give that consent? Likewise, if the lessor's consent was not required by the lease agreement, how could the failure to give that consent provide the basis for a claim of interference with a contractual relationship?
3. I question the authority of the trial court to structure a monthly additur to its damages award in the event of an appeal.
Because the concerns expressed in paragraphs 2 and 3 are not argued to this Court with citations to legal authority, I concur in the result.
NOTES
[1] Section 35-4-6, Ala.Code 1975, states:

"No leasehold estate can be created for a longer term than 99 years. Leases for more than 20 years shall be void for the excess over said period unless the lease or a memorandum thereof is acknowledged or approved as required by law in conveyances of real estate and recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated."
[2] This Court has previously enunciated the doctrine of merger in a real-estate transaction as follow: "[A]bsent fraud or mistake, when a contract to sell or convey land is consummated by execution and delivery of a deed, that contract becomes `functus officio' and the deed becomes the sole memorial of the parties' agreement." Swanson v. Green, 572 So.2d 1246, 1248 (Ala. 1990) (footnote omitted).
[3] The Alabama Rules of Professional Conduct replaced the Alabama Code of Professional Responsibility, effective January 1, 1991. Rule 3.7, Ala. R. Prof. Cond., covers the subject formerly covered by DR 5-102.
[4] We further note that we find no substantiation of Gilbert's argument that Isom's law firm should also have been disqualified from representing Rogina. Although DR 5-102 may have contemplated the recusal of an entire firm in an instance such as Gilbert alleged in his motion, no such requirement is found in Rule 3.7, Ala. R. Prof. Cond. Instead, Rule 3.7 provides that a lawyer may act as an advocate in a trial in which another lawyer from his firm may be a witness except where such representation would be adverse to a current or former client of that lawyer.
[5] It just happened in this case that the lessee had purportedly exercised several of its lease extensions at once, thereby adding an additional block of greater than five years to the end of the initial term of the lease and allowing the trial court's interpretation room for operation that it otherwise would not have had. I also note that there is language elsewhere in the lease agreement that arguably contemplates the exercise of extensions, one at a time, at the end of the primary term and of each successive extension term of the lease agreement.